FLEMING, Adm'r of Wage and Hour Division, Department of Labor, v. KENTON LOOSE LEAF TOBACCO WAREHOUSE CO.

No. 49.

District Court, E. D. Kentucky.

Oct. 11, 1941.

Charles H. Livengood, Jr., Regional Atty., Wage & Hour Division of U. S. Dept. of Labor, of Nashville, Tenn. (Gerard D. Reilly, Sol. and Irving J. Levy, Asst. Sol., both of Washington, D.C., and Jeter S. Ray, Atty., all of U. S. Department of Labor, both of Nashville, Tenn., on the brief; Charles R. Reynolds, Jr., of Washington, D. C., of counsel), for plaintiff.

William A. Price, of Rouse, Price & Adams, of Covington, Ky., for defendant.

SWINFORD, District Judge.

The Administrator of the Wage and Hour Division of the United States Department of Labor seeks to enjoin the defendant from violating Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of June 25, 1938, 52 Stat. 1060, 29 U.S. C.A. §§ 201–219.

Section 15(a) (2) of the Act makes it unlawful to violate the provisions of Sections 6 and 7. Section 6 requires employers to pay employees engaged in interstate commerce or in the production of goods in interstate commerce according to a certain wage scale. Section 7 fixes maximum hours. Section 15(a) (5) also makes it unlawful for any employee to violate the provisions of Sections 11(c). Section 11(c) provides for the keeping of accurate records of the wages and hours of the employees.

The defendant is a loose leaf tobacco warehouse where tobacco is sold at public auction for a period of sixty to ninety days each season. It has not complied with the provisions of the Act. The question for

determination is whether a tobacco loose leaf auction sales warehouse is subject to the provisions of the Fair Labor Standards Act.

There is no material dispute about the facts in the case. The defendant conducts for from sixty to ninety days a tobacco auction at Covington, Kentucky, on the banks of the Ohio River and directly opposite the City of Cincinnati. Growers of tobacco deliver their crops to the warehouse where it is weighed and placed in baskets according to grade. The baskets are then placed in rows on the warehouse floor and auctioned off.

From the time the tobacco is brought to the warehouse by the owner until it is sold and removed from the warehouse floor it is handled by employees of the defendant.

For the three years in question it is shown that from 36% to 50% of the tobacco so handled by the defendant came from other States to Kentucky for sale. Eight to ten percent is removed out of the State immediately by the purchaser and ninety percent of what remains in the State is eventually shipped out of the State for manufacture, usually within two years.

Other than an infinitesimal amount, none of the tobacco is bought by the warehouse. The whole function of the warehouse is to lend its agencies, for a stipulated fee, to the grower or seller of the tobacco for sale to the purchasers, usually manufacturers of tobacco products.

■ The defendant or warehouse is not a producer and never has any interest in the tobacco except to handle it during the process of delivery, sale and transfer between grower and manufacturer. Yet this product is undoubtedly moving in interstate commerce at the time of this handling. Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

The purposes of the Fair Labor Standards Act are set forth in Section 2(a), wherein it is stated that the legislation is necessary because Congress finds "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers", all of which burdens and affects interstate commerce.

■ The Court cannot question this pronouncement of Congress. The record here amply justifies such a finding by Congress in the industry under consideration. It is shown and not contradicted that Kentucky has the lowest wage scale of any of the tobacco marketing States.

In Board of Trade of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 477, 67 L.Ed. 839, the court said:

"In the act we are considering, Congress has expressly declared that transactions and prices of grain in dealing in futures are susceptible to speculation, manipulation, and control which are detrimental to the producer and consumer and persons handling grain in interstate commerce and render regulation imperative for the protection of such commerce and the national public interest therein.

"It is clear from the citations, in the statement of the case, of evidence before committees of investigation as to manipulations of the futures market and their effect, that we would be unwarranted in rejecting the finding of Congress as unreasonable, and that in our inquiry as to the validity of this legislation we must accept the view that such manipulation does work to the detriment of producers, consumers, shippers and legitimate dealers in interstate commerce in grain and that it is a real abuse."

In Mulford et al. v. Smith et al., 307 U.S. 38, 59 S.Ct. 648, 649, 83 L.Ed. 1092, in considering the constitutionality of the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281 et seq., the opinion states: "Section 311 is a finding by the Congress that the marketing of tobacco is a basic industry which directly affects interstate and foreign commerce; * * *." The opinion sustained the validity of the Act and thus approved this finding by Congress.

In United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, the court had under consideration the identical sections of the Act involved here and sustained their constitutionality.

■ No case has been called to my attention and I have found none deciding the exact question here presented. A warehouse is not a producer in the ordinary sense of the word. Neither is it engaged as a "service establishment" and subject to the exemptions under Section 13(a) (2) of the Act.

In discussing the question of service establishments, Judge Shackelford Miller, Jr., of the Western District of Kentucky, in the case of Stucker v. Roselle, D.C., 37 F.Supp. 864, 867, made the following observations which I think clearly indicate that a loose

leaf tobacco warehouse is not the kind of service establishment Congress had in mind when the statute was enacted: "An exact statement of what is meant by the term service establishment is difficult, but for the purposes of this case we can follow the definition given by Interpretative Bulletin #6 issued by the Administrator of the Wage and Hour Division of the Department of Labor, in December, 1938, in which it is stated 'typical examples of service establishments, akin to retail establishments, within the meaning of the exemption are restaurants, hotels, laundries, garages, barber shops, beauty parlors and funeral homes.' In the foregoing examples service is given to customers as the chief business of the concern rather than as an incidental part of the business, or work or labor is performed upon the person of the customer or upon property which the customer has left for such service to be given to it."

■ It is, however, a handler of a product moving in interstate commerce and thereby comes squarely within the definitions of "producer" as defined by Section 3(j).

I am of the opinion that the prayer of the plaintiff's complaint should be granted.

Findings of fact, conclusions of law and judgment should be submitted in accordance with this opinion.