JAMES V. REUTER, Inc., v. WALLING,
Administrator of Wage and Hour
Division.

No. 10637.

Circuit Court of Appeals, Fifth Circuit.

July 22, 1943.

316

Frank S. Normann, of New Orleans, La., for appellant.

James H. Hynes, Acting Regional Atty., Department of Labor, of Birmingham, Ala., and Bessie Margolin, Asst. Sol., U.S. Department of Labor, of Washington, D. C., for appellee.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellant appeals from an injunction of the District Court restraining it from violating certain provisions of the Fair Labor Standards Act 29 U.S.C.A. § 201 et seq. The lower Court found that defendant was engaged in purchasing, receiving, handling, selling, and distributing at wholesale fresh fruits, vegetables, and similar produce. Approximately fifty per cent of the produce handled by appellant was purchased from outside the State of Louisiana and shipped to the defendant by rail in refrigerated cars. The cars are delivered by the railroad company to the switch of the defendant, approximately one block from appellant's place of business, and the produce is ultimately unloaded by some of defendant's employees and trucked to the defendant's store where the produce is sorted, selected, prepared, and repackaged for sale. Approximately ninety-five per cent of the defendant's sales are local and the other five per cent of the defendant's yearly sales are to customers in states other than Louisiana. Appellant's truck drivers also make delivery of produce to vessels in the harbor of New Orleans for the subsistence of the crews of such vessels, usually in amounts sufficient to last until the next port is reached. The commodities handled by the appellant are perishable, the very nature of which requires rapid sale and disposition, and in the course of business are unloaded, examined, sorted, repackaged, sold, and delivered within one to five days. There is no dispute over the findings of fact by the lower Court.

The defendant claimed that it was not within the provisions of the Fair Labor Standards Act and, therefore, not required to comply with its provisions.

The Court below made a very broad injunctive order after reaching the following legal conclusions:

1. That the employees who unloaded produce from freight cars coming from out of the state; those who hauled produce from freight cars to defendant's place of business and unloaded it; those who prepared and shipped orders to out-of-state customers; those who prepared and delivered orders to local ship chandlers for provisioning of vessels on their voyages, were engaged in commerce within the meaning of Sections 206 and 207, 29 U.S.C.A.

2. That the employees of the defendant who sorted, picked over, handled, packaged, and repackaged produce in the defendant's place of business without regard to the final destination thereof, were producing goods for commerce within the meaning of the Act.

3. That those employees engaged in delivering goods to vessels were engaged in commerce within the meaning of the Act since the defendant had every reason to expect that the goods would move from the state to a place outside thereof.

4. Because of the rapidity in turnover of produce received from out of the state, due to the perishable nature and the defendant's method of handling same, there was a continuity of movement of such goods from out of the state to defendant's customers, whether local or distant, and that all employees of the defendant were a part of the movement and engaged in commerce within the meaning of the Act.

5. That the Act applies generally to employees who handle goods without reference to their ultimate destination, whether intrastate or interstate, according to the daily demands of the business.

6. That employees of a wholesaler engaged in obtaining goods from points outside of the state and delivering them to points in other states are engaged in commerce and entitled to the benefits of the Act.

7. That defendant, by paying its employees who were engaged in commerce and production of goods for commerce at rates less than the minima prescribed by the Act,

has violated Sections 206 and 215 (a) (2) of 29 U.S.C.A.

8. That by paying its employees less than time and one-half for overtime during the period involved, defendant has violated Sections 207 and 215(a) (2) of 29 U.S.C.A.

9. By failing to make, keep, and preserve records setting forth information required by the regulations of the Administrator, and more particularly by failing to record the hours worked each day and each week by each employee, and by failing to credit employees for all hours worked, the defendant violated Sections 211(c) and 215 (a) (5) of 29 U.S.C.A.

10. That by shipping to out-of-state customers goods produced by employees not paid according to the wage requirements of the Act, the defendant violated Section 215 (a) of 29 U.S.C.A.

An injunction in conformity with the foregoing conclusions was entered.

█ We are unable to agree with all of the legal conclusions of the lower Court. We do, however, agree that truck drivers and their helpers when engaged in unloading produce from freight cars coming from out of the State and when engaged for a substantial part of their time in hauling such produce from freight cars to defendant's place of business are within the coverage of Sec. 6 (Title 29 U.S.C.A. § 206), or the minimum wage provision of the Act, but we hold that truck drivers are not subject to the overtime provisions of the Act. See Southland Gasoline Company v. Bayley, 63 S.Ct. 917, 87 L.Ed. ——, decided May 3, 1943; Walling v. Silver Brothers Co., 1 Cir., 136 F.2d 168, decided May 21, 1943.[1]

█ We further hold that employees, when engaged for a substantial part of their time in: (a) preparing, selling, shipping, or delivering for shipment, orders to out-of-state customers; (b) buying, ordering, paying for, keeping records on, goods purchased from out of the State, are within the coverage of both the minimum wage (§ 6) and overtime (§ 7) provisions of the Act and should be paid not less than the minimum, with time and one-half for over-

---

[1] Sec. 13(b) (Sec. 213(b), Title 29 U. S.C.A.), provides:

"The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of the Motor Carrier Act, 1935; or (2) any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act."

Sec. 304(a) (3), Title 49 U.S.C.A. provides that it shall be the duty of the Interstate Commerce Commission—

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment * * *."

The Supreme Court, in Southland Gasoline Co. v. Bayley, supra [63 S.Ct. 918, 87 L.Ed. ——], in construing the above statutes as they relate to employees of private carriers (such as is defendant here), said:

"* * * Section 13(b) (1) exempts from the maximum hour limitation of the Fair Labor Standards Act those employees over whom the Interstate Commerce Commission 'has power to' prescribe maximum hours of service. Section 204(a) (3)† certainly gives 'power to' the Commission to establish maximum hours for the employees here involved. There is a limitation on the authority delegated, urged here by the employees as a condition precedent to the existence of the power. This is that the Commission may establish maximum hours only 'if need therefor is found'. Since the employees seek unpaid overtime compensation only for the period prior to a finding of need by the Commission, the employees argue that no 'power' existed in the Commission during the time for which compensation is claimed. We conclude to the contrary. The power to fix maximum hours has existed in the Commission since the enactment of the Motor Carrier Act in 1935. Before that power could be used, it was necessary to make a finding of need. Such necessity, however, did not affect the existence of the power. Legislation frequently delegates power subject to a finding of need or necessity for its exercise. * * *

"Not only does the language of section 13(b) (1) indicate this Congressional purpose but what slight evidence there is from the legislative history points to the same conclusion. The amendment was adopted to free operators of motor vehicles from the regulation by two agencies of the hours of drivers."

---

† Sec. 304(a) (3), Title 49, U.S.C.A.

318

time, for each hour so engaged.[2] We also agree that the defendant should be required to keep accurate and adequate records as required by the Act and regulations promulgated thereunder.

■ We disagree with the legal conclusion of the lower Court that the defendant's employees were engaged in the production of goods for commerce, as held in Paragraph 3 of the Conclusions of the Court below, hereinabove stated as Paragraph 2.

■ We disagree with the legal conclusions of Paragraph 4 of the Conclusions of the Court below, hereinabove stated as Paragraph 3, that the employees when packing, hauling, and delivering goods to vessels in the port of New Orleans for the provisioning of the crew were within the provisions of the Act, for the reason that the commodities so delivered were to be consumed by the crew of the vessel and were not to be either shipped, sold, or delivered in interstate commerce, but were delivered to the ultimate consumer, and, under Paragraph (i) of Section 203, Title 29 U.S.C.A.,[3] defining the meaning of "goods" covered by the Act, the food for the crews would be excluded. The vessel was not a producer, manufacturer, or processor, but was the ultimate consumer into whose hands the "actual physical possession" of the goods was delivered. It matters not, therefore, whether some portion of these goods survived until the vessels reached foreign waters or whether the goods were consumed by the crew in port, because Congress was undertaking to regulate only goods which were intended for resale or for processing or for manufacturing into other products.

This situation in reference to goods delivered to the ultimate consumer is entirely unlike the delivery of ice to refrigerating cars to accompany and preserve perishable products moving in interstate commerce as in Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165, and Atlantic Co. v. Com'r of Int. Rev., 5 Cir., 129 F.2d 87. The ice in each of those cases was an essential part of the process of shipping the fruit or vegetables. It accompanied the produce along its interstate journey. The ice companies sold same with knowledge that it was to be shipped in

interstate commerce, as a sine qua non to interstate vegetable shipments. In Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897, the federal regulations required cigars to be shipped in a container, which likewise accompanied the cigars in their interstate journey, and the cigar-box manufacturer knew that shipment and delivery in interstate commerce was not only intended but required.

But food for the crew of a vessel might be consumed in port. A member of the crew could eat and get shore leave, or desert the ship. He could subsist on food other than that sold by defendant. The food does not necessarily accompany the cargo, albeit the crew must eat on the voyage, but so must a flagman or conductor on an interstate train, yet it would hardly be seriously contended that the restaurateur who served the flagman a lunch en route, or the wife or boarding house keeper who prepared a lunch for him to take on his run, was engaged in interstate commerce.

Congress did not exercise the full extent of its power in dealing with the subject, but expressly excluded goods delivered to the ultimate consumer, other than a producer, manufacturer, or processor. The vessel was not a producer or manufacturer, and it is not believed that the term "processor" included the digestive processes of the crew.

■ Section 215 (a) (1) makes it unlawful "to transport, offer for transportation, * * * or to ship, deliver, or sell *with knowledge that shipment or delivery on sale thereof in commerce is intended,* any goods" produced in violation of the Act. "Goods" after delivery to ultimate consumer are excluded, and hence not "in commerce". It, therefore, is not unlawful to ship, sell, or deliver goods to the ultimate consumer which are not intended for re selling or manufacturing or processing.

■ Nor do we agree with the legal conclusion of the lower Court that perishable fruits and vegetables may not come to rest merely because they cannot be kept indefinitely. The lower Court [49 F.Supp. 485, 487] found that: *"Because of their perish-- able nature,* there is a very rapid turnover of the produce and goods handled by

---

[2] Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S. Ct. 332, 87 L.Ed. ——.

[3] Provided that the term " 'goods' * * * does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

defendant. In general, all goods received from out-of-state sources are unloaded, examined, sorted, repackaged, sold and delivered within one to five days after they are acquired by defendant."

They may not come to rest as long as an axe handle might on the shelf of a hardware merchant, but goods sold by the defendant locally have certainly come to the end of their interstate journey and have been placed in the store of the merchant along with goods locally acquired, and are, therefore, subject to the jurisdiction of the State. The term "coming to rest" must be considered in its relation to the commodity. The rest period of an axe handle could be far greater than the rest period of a tomato, and the perishable nature of the commodity alone would not place the vegetable merchant under the Act when the hardware merchant is not, merely because the axe handle could endure a longer period of repose than a tomato. Vegetables do not have to "come to rot" in order to "come to rest".

■ It is a matter of common knowledge that perishable fruits and vegetables cannot be "uncrated and examined", or "examined, sorted, repackaged, sold and delivered" (quoting the language of the lower Court) on the run. The spoiled and rotten must be culled out. Buyers must be found willing to buy, and pay for, produce of the quality and price offered. That sold must be segregated and selected to fill the order. The produce must often be repackaged or crated and thereafter delivery must be made. These miscellaneous tasks are time consuming and are inconsistent with continuity of movement.

■ We do not hold, however, that commodities left unloaded in the refrigerated car and not placed in the store or warehouse have come to rest. Until and unless the goods are unloaded from the freight car and placed in the store or warehouse the interstate movement will not have ended.[4]

■ It appears that only five per cent of the sales of the appellant are to interstate customers. It also appears that the appellant has ten to fifteen employees performing intra- and interstate functions. If the functions in connection with sales of commodites to out-of-state customers were equally divided between ten employees then the interstate activity of each employee would touch only one-half of one per cent of the business of appellant. If the five per cent

interstate business were equally handled by the fifteen employees, then the interstate activity of each employee would affect only one-third of one per cent of the business, as measured in money, and since the Court is not concerned with trifles its injunctive processes would hardly be called forth unless some of the employees have been engaged for a substantial portion of their time in these interstate activities.

■ Since manifestly some of the employees are engaged in interstate commerce the defendant should be required to keep adequate records as to all of its employees as required by the Act and regulations promulgated thereunder.

The lower Court apparently determined that all of the employees of the defendant were covered under the Act, or, if it did not consider that all of defendant's employees were within the Act the injunctive order did not specify what employees, if any, were not covered. The Court below, by the width and indefiniteness of its injunction, committed an error similar to the one committed by the writer as District Judge in Fleming v. Jacksonville Paper Company, 5 Cir., 128 F.2d 395.

The cause should be, and the same is hereby, reversed and remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

HOLMES, Circuit Judge (dissenting).

The issues were heard by the court below on oral and documentary evidence. The court made its findings of fact and announced its conclusions of law; and, since the evidence was not brought up on appeal, it is on those findings and conclusions that the judgment appealed from must stand or fall.

The opinion says that the majority does not "agree with the legal conclusion of the lower Court that perishable fruits and vegetables may not come to rest merely because they cannot be kept indefinitely." With deference, the district court did not so hold. It found as a fact that such was the rapidity of movement and the method of handling of goods purchased from outside the state that each such transaction was a continuous and unbroken shipment in interstate commerce from without the state through appellant into the hands of its customers. Upon this finding of fact, the court held

---

[4] Texas Company v. Brown, 258 U.S. 466, 477, 42 S.Ct. 375, 66 L.Ed. 721.

as a matter of law that all of appellant's employees were an integral part of that interstate movement and were therefore engaged in commerce under the Act. This ruling is not erroneous as a matter of law, and there is nothing in the record to show that it is untrue as a matter of fact.

The burden is on the appellant to show error in the judgment that it is asking this court to set aside. It has not met this burden. We should apply here the reasoning of Higgins v. Carr Bros., 317 U.S. 572, 63 S.Ct. 337, 338, 87 L.Ed. ——, in which there was a failure "to show an actual or practical continuity of movement of merchandise from without the state to respondent's regular customers within the state"; and wherein the Supreme Court held that there was nothing in the record to impeach the accuracy of the conclusion of the court below, saying: "Thus petitioner has not maintained the burden of showing error in the judgment which he asks us to set aside."

Since appellant has failed to show that this particular finding was clearly erroneous, and since by it every employee of appellant was brought within the coverage of the Act, I think the judgment appealed from should be affirmed.