## A. H. PHILLIPS, Inc., v. WALLING.
### No. 3979.

Circuit Court of Appeals, First Circuit.

July 20, 1944.

Writ of Certiorari Granted Dec. 4, 1944.

See 65 S.Ct. 268.

Frederick M. Kingsbury, Joseph B. Ely, and Edward T. Collins, all of Springfield, Mass., for appellant.

Archibald Cox, Associate Solicitor, Wage & Hour Div., Dept. of Labor, of Washington, D. C., Douglas B. Maggs, Solicitor, and George B. Searls, Supervising Attorney and George H. Foley, Regional Attorney, United States Department of Labor, of Boston, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and HEALEY, District Judge.

MAHONEY, Circuit Judge.

This action was brought by the Administrator of the Wage and Hour Division, United States Department of Labor, under § 17 of the Fair Labor Standards Act of 1938. Act of June 25, 1938, 52 Stat. 1060, Ch. 676, 29 U.S.C.A. § 201 et seq., to restrain the defendant, A. H. Phillips, Inc., from violating the provisions of §§ 15(a) (1), 15(a) (2) and 15(a) (5) of the Act. The lower court adopted as its findings of fact those stipulated by the parties and concluded that certain employees of the defendant were exempt from the provisions of the Act, but that its central office and warehouse employees were entitled to its benefits and issued its injunction accordingly. The defendant has appealed.

A. H. Phillips, Inc., is a Massachusetts corporation engaged in the acquisition, handling and distribution of various kinds of merchandise including canned goods, bottled goods, meats, vegetables, groceries, cigarettes, candy, coal and numerous other items to the extent of about $1,500,000 annually. It operates a chain store system with forty retail grocery stores in Massachusetts and nine in Connecticut and a central office and warehouse in Springfield, Massachusetts. The warehouse contains approximately 250,000 square feet of floor space and it has a receiving platform and railroad siding. It is maintained as a place to which the merchandise, about 80% of which comes from outside Massachusetts, is brought and from which it is distributed to its various retail stores. Its usual inventory runs between $175,000 and $200,-000. A card index is kept for the purpose of maintaining a record of the supplies in the warehouse and revealing the amount of the stock of any particular commodity on hand. When it appears from the index that a particular item is low more goods are ordered to meet the prospective de-

mand from the stores. Sometimes when the prices in the market are particularly favorable merchandise is bought irrespective of the index. The demand for supplies from the retail stores does not vary to any great extent and the requirements to meet such demand from week to week can be easily anticipated. Most of the merchandise is brought to the warehouse by rail and unloaded from the cars by the warehouse employees. The rest of it comes in by common carrier trucks. A separate record of the business of each store is kept by the defendant and the individual retail store managers prepare requisitions for the merchandise required by their stores. These requisitions are subject to revision by the superintendents at the central office. Each week the merchandise is delivered from the warehouse to the stores to fill such orders and further deliveries are made as required.

The defendant employs its own trucks to make deliveries from the warehouse to its retail stores and the drivers operate interchangeably in such work within and without the State of Massachusetts. All goods handled by the defendant pass through the warehouse except bread, pastry and milk, which are received directly by the retail stores from local sources. The central office negotiates the price and terms of sale of such articles and deliveries of them are made upon requisition of the store manager. The central office receives the invoices for these direct deliveries and makes the payment for them. The average turnover of the goods in the warehouse is about twelve times annually though the turnover of some things is more rapid. Ninety per cent of the goods is shipped from the warehouse in the original unbroken packages. The office employees check invoices, pay bills, and check direct deliveries to the stores. There is no record kept of the amount of time spent by such employees in connection with the order and receipt or shipment of out of state goods and their other duties, and interstate and intrastate shipments are handled indiscriminately by the receiving, shipping and billing clerks. Unloading of incoming shipments of merchandise from outside Massachusetts, and making up of outgoing shipments to the retail stores in Connecticut are all part of the regular duties of the warehousemen and their helpers.

Nowhere does it appear in the case at bar that the appellant denies that its warehouse and central office employees are engaged in interstate commerce. From the stipulated facts it is clear that these employees are engaged in work involving the receipt of merchandise from outside the state and in delivering merchandise from the warehouse to the retail stores in Connecticut. Further these goods come from points outside the state and after passing through the warehouse reach their final destination in the local retail stores. There is present that particularity in the continuity of their movement which shows that their entry in the warehouse was but a temporary pause in their interstate journey and they remain in interstate commerce until they are delivered at the retail stores. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

The fact that the warehouse and office employees are engaged in interstate commerce does not dispose of the case, for the appellant maintains that it is a retail establishment, the greater part of whose selling is in intrastate commerce, and that, therefore, its employees are exempted from the operation of the Act under § 13(a) (2). It insists that the word "establishment" means appellant's entire business organization. It finds support for its contention in Walling v. L. Wiemann Co., 7 Cir., 1943, 138 F.2d 602, certiorari denied 321 U.S. 785, 64 S.Ct. 782, and Allesandro et al. v. C. F. Smith Co., 6 Cir., 1943, 136 F.2d 75, 149 A.L.R. 382, and certain district court decisions. We do not agree. We think that the more persuasive authorities support the construction that the word "establishment" means a single place of business.

In Walling v. Goldblatt Bros., 7 Cir., 1942, 128 F.2d 778, 783, the defendant operated three warehouses in Chicago from which it shipped goods to its ten department stores, some of which were outside the State of Illinois, and the court held as to the employees who distributed and delivered goods from the warehouses to the stores in Illinois that they were engaged in intrastate commerce and not covered by the Act. But in speaking of § 13(a) (2) it said:[1] "We think that such elimination

---

[1] This case may not be relied upon as authority on this point since the same circuit in the Wiemann case refused to follow this dictum, but we think it represents the better view.

of applicability was intended to include, only ordinary retail stores, * * * and not a great establishment shipping goods out of the state to two of its important outlets."

Walling v. American Stores Co., 3 Cir., 1943, 133 F.2d 840, 842, is a case involving a large chain store system operating eleven warehouses, seven bakeries, canneries, and purchasing offices, in various states and approximately twenty-three hundred retail stores. It claimed exemption under § 13 (a) (2) on the ground that its entire enterprise was a retail establishment. The court said: "From the standpoint of business integration, it might conceivably be assumed that this whole enterprise is an 'establishment'. However, it is quite another thing to say that it is a retail establishment when it engages in so many important operations other than retailing, even though the retail sale is the event from which the defendant's income is derived."

It gave a full and complete legislative history of the section and determined: "If defendant's interpretation were to be adopted, any manufacturer or wholesaler, no matter how large, would bring himself within the exemption through the establishment of his own retail outlets for sale to intrastate customers. The legislative policy of the Act as expressed in § 2 is not to be defeated by such artificial enlargement of two words used in an exemption clause".

The defendant in Walling v. Block, 9 Cir., 1943, 139 F.2d 268, certiorari denied 321 U.S. 788, 64 S.Ct. 787, owned and operated a chain of fourteen retail shoe stores in Washington, three in Oregon and two in Idaho, and a central office and warehouse in Seattle. The court decided that the services rendered by the employees of the warehouse and central office were a mere extension to and integral part of the operation of each store in the group, and since the selling in no store was substantially interstate, the employees in question were excluded from coverage by § 13(a)

(2). But we agree with the dissenting opinion which said that neither the central office and warehouse nor the appellee's business as a whole—of which the former is a distinct unit—can properly be defined as a "retail establishment" within the reach of the exception; that the central office and warehouse performs a quasi wholesale and certainly a non-retail function; that the entire chain or business or industry is not an "establishment", although each link or outlet or store may properly be so termed. It also said that the legislative history indicates that Congress did not intend to exempt a multistate business like the defendant's from the operation of the Act.

When the bill which was finally enacted as the Fair Labor Standards Act of 1938 was before the House of Representatives, some of its members sought to exempt from the operation of the Act the local retail merchant. They were thinking of the small retailer whose business was carried on near state lines and some of which was in interstate commerce. An amendment was passed exempting "any retail industry the greater part of whose sales is in intrastate commerce" but when the measure was returned to the House from the Conference Committee this phraseology was changed. It is significant that the words "any retail industry" were omitted and the exemption was made to apply to employees "engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." The word "industry" is defined in the Act to mean the "trade, business, industry, or branch thereof, or group of industries, in which individuals are gainfully employed." If the word "establishment" was considered to mean the same thing as "industry", there was no need to make the change in the amendment. Obviously, the word "establishment" was never meant to mean an entire organization.

The word "establishment" in legislative, administrative and commercial practice is treated as meaning a separate unit.[2]

---

[2] Under the N.R.A. Codes of Fair Competition, Vol. V, pp. 5–15 (Wholesale Food and Grocery Trade), wholesale food and grocery establishment is defined as "any warehouse, office, or other establishment where a food and grocery wholesaler carried on business. Chain store warehouses and central offices were subject to the wholesale code and were not regarded as parts of retail establishments."

See also:
Under the Bureau of the Census, Instructions to Enumerators for business and manufacturers, 1939. Sixteenth Decennial Census of the United States, p. 22,
Item 1 of Form 10, "Description of Establishment", requests information regarding (1) "Name of Establishment", (2) "Location of Establishment", (3) "Type of Establishment (such as cen-

Furthermore, since 1938, when Interpretative Bulletin No. 6 was issued down to its latest revision in 1941, the Administrator has consistently maintained this interpretation of the words "retail establishment" as evidenced by the language in paragraph 37, which states that: "In the ordinary case, each physically separated unit or branch store will be considered a separate establishment within the meaning of the exemption. The exemption, however, does not apply to warehouses, central executive offices, manufacturing or processing plants, or other non-retail selling units which distribute to or serve stores. These are physically separated establishments which do not have the characteristics of retail or service establishments."

Though no authorization for it appears in § 13(a) (2), this interpretation has some evidentiary value since it reveals a "contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making its parts work efficiently and smoothly while they are yet untried and new." United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 1067, 84 L.Ed. 1345; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796.

We do not believe this whole enterprise is a retail establishment within the meaning of the exemption. The central office and warehouse is a distinctly different type of place than the retail stores. No sales are made there and no direct contact is had with the customers. Each retail store is in itself an establishment, a place of business where the final disposition of the merchandise is made by sale to the customers. The central office and warehouse is also a separate establishment where the supervising managerial activities of the whole enterprise are carried on. They are distinct and separate units, though together they make up the entire organization. To be a successful chain store organization or system, it not only operates retail stores but it also buys in large quantities with a central point of receipt and distribution in the nature of a wholesaler. When such a system is developed and maintained it can no longer be considered a retail establishment as designated in § 13(a) (2). Wholesalers must be in compliance with the Act. They cannot take advantage of the exemption. We believe Congress intended no such unfair discrimination. It is quite clear, as was said by the Supreme Court in Walling v. Jacksonville Paper Co., supra [317 U.S. 564, 63 S.Ct. 337, 87 L.Ed. 460], that the exemption in § 13(a) (2) was added to eliminate "those retailers located near the state lines and making some interstate sales."

The judgment of the District Court is affirmed.

tral office, district office, chain store warehouse, etc.)", and (4) "Name of Organization or Company of which this Establishment is a Part."

Item 6, "Description of the organization or company of which this Establishment is a Part", requires a detailed specification of the number and types of different establishments operated by the company.

Executive Office of the President, Bureau of Budget, Standard Industrial Classification, 1940, Vol. 1, Part 1, p. iii, Vol. II, Part 2, pp. 41, 131. The central statistical board of the Executive Department of the United States excludes chain store warehouses from the category of retail establishments.

Chain Store Taxing Statutes of the various states where each unit is treated as an establishment, and the number of establishments is used as the measure of the tax.