## McCOMB v. HERLIHY et al.
### No. 5579.

Circuit Court of Appeals, Fourth Circuit.
May 7, 1947.

Frederick U. Reel, Atty., United States Department of Labor, of Washington, D. C. (William S. Tyson, Solicitor, and Bessie Margolin, Asst. Solicitor, both of Washington, D.C., George A. Downing, Regional Atty., of Atlanta, Ga., Morton Liftin and James F. O'Hare, Attys., United States Department of Labor, both of Washington, D. C., on the brief), for appellant.

John H. Nolen, of Spartanburg, S.C. (Odom, Bostick & Nolen, of Spartanburg, S.C., and P. L. Felder, Jr., of Orangeburg, S.C., on the brief), for appellees.

Before GRONER, Chief Justice, United States Court of Appeals for District of Columbia, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought under Section 17 of the Fair Labor Standards Act, 29 U.S.C.A. § 217, to enjoin a partnership known as the Power Oil Company from violation of the provisions of the statute as to the wages and hours of employment of their employees and the keeping of records in regard thereto. The suit was dismissed by the District Judge on the ground that the employees affected were not engaged in interstate commerce or in the production of goods therefor. It was conceded that the requirements of the statute were not observed and that the employees were not engaged in the production of goods for commerce. The question was whether they were engaged in interstate commerce within the meaning of the Act.

The firm maintained an office and warehouse at Orangeburg, South Carolina, and was engaged in the purchase and wholesale distribution of gasoline, motor oil, fuel oil, tires, batteries and other automobile supplies. All of the sales and deliveries by the business were made in the State of South Carolina and the greater part of the merchandise was purchased in that state. But approximately twenty per cent. of the goods distributed by the firm, such as tires, batteries and motor oil, was purchased outside of South Carolina and shipped into the state by rail, truck or express. Goods shipped by railroad came in cars that were spotted on a spur track from which they were unloaded into the warehouse. Incoming truck and express shipments were unloaded at a platform at the warehouse. Employees of the business assisted in the ordering, keeping account of and paying for the goods purchased outside the state; and when these goods arrived at the warehouse, employees unloaded them, inventoried them, paid the express charges and performed the usual duties of receiving goods. All the employees worked interchangeably on all types of work in their departments, and no attempt was made to segregate the interstate from the intrastate activities. The goods purchased outside the state were not ordered or destined for special customers, and there was no continuous movement of particular goods from the producer outside the state to customers within the state.

■ There can be no doubt that one who buys and imports goods across state lines for sale and distribution within his state is engaged in interstate commerce; nor can it be doubted that the employees of such an importer who work at the buying and receiving of goods across state lines are engaged in such commerce. So much was expressly decided in Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395, 398, which in this respect was affirmed on certiorari to the Supreme Court in Walling v. Jacksonville Paper Co., 317 U.S. 564, 566, 63 S.Ct. 332, 87 L.Ed. 460. In that case, as in the pending case, the employees, who were held subject to the Act, were engaged in writing letters and performing other work in the purchase and receipt of out-of-state goods, or were engaged in unloading the goods from railroad cars and trucks upon arrival at the employer's warehouse and performed the other usual duties of receiving goods. The decision, however, was not confined to activities relating to the purchase and receipt of out-of-state goods, for it was found that a great part of the company's business consisted in the sale and delivery within the state of goods procured outside the state in conformity with prior orders or contracts or understandings with their customers; and it was held that such goods retained their interstate character until finally delivered to the customer, even though they came to a temporary pause in the company's warehouse, and that employees who handled them at any time before delivery to the customer were engaged in interstate commerce.

This latter feature has no counterpart in the pending case since the goods imported by the partnership were not intended for specific customers and the interstate movement came to an end when the goods were placed in the warehouse. It was on this account that the District Judge thought that the cited case was not applicable and based his conclusion on the decision in Higgins v. Carr Bros., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, wherein it was held that an employee who handled out-of-state goods for his employer was not within the Act since the interstate movement of the goods had ended before he performed his duties which consisted in putting up orders, loading trucks for delivery to retail dealers within the state and driving a truck in the distribution of merchandise to the local trade. The decision was confined to the particular employee and gave effect to the rule that the applicability of the Act to any employee is dependent upon the character of the employee's work. Kirschbaum Co. v. Walling, 316 U.S. 517, 525, 62 S.Ct. 1116, 86 L.Ed. 1638.

■ The distinguishing features of the instant case are obvious. The employees of the partnership took part in the interstate movement of the merchandise since they assisted in its purchase and in its transfer from the custody of the carriers to its final destination in the partnership warehouse where the transportation from state to state came to an end. These activities did not lose their interstate character merely because the interstate movement ended upon their completion, so that the rest of the business consisted in the intrastate handling and delivery of the goods. There is no basis in the decided cases for the conclusion that employees who handle out-of-state goods are not engaged in commerce in the sense of the Fair Labor Standards Act unless the flow of the interstate movement continues until final delivery to the importer's customers.

■ It has been held under other statutes and in other relations that the various steps in the procuring of out-of-state goods, such as the negotiation therefor and the buying and selling thereof for shipment from one state to another, constitute interstate commerce. Real Silk Hosiery Mills v. Portland, 268 U.S. 325, 335, 45 S.Ct. 525, 69 L.Ed 982; Federal Trade Comm. v. Pacific Paper Ass'n, 273 U.S. 52, 64, 47 S.Ct. 255, 71 L.Ed. 534; Furst v. Brewster, 282 U.S. 493, 497, 498, 51 S.Ct. 295, 75 L.Ed. 478. Likewise it is established that the unloading of interstate shipments is an activity in interstate commerce. Baltimore & O. S. W. R. R. v. Burtch, 263 U.S. 540, 544, 44 S.Ct. 165, 68 L.Ed. 433; Puget Sound Co. v. State Tax Comm., 302 U.S. 90, 92, 58 S.Ct. 72, 82 L.Ed. 68; Union Stock Yard Co. v. United States, 308 U.S. 213, 219, 60 S.Ct. 193, 84 L.Ed. 198; Joseph v. Carter & Weekes Stevedoring Co., 67 S.Ct. 815, 817. It is true that it has been said that decisions dealing with various assertions of state or federal power in the

commerce field are not particularly helpful in determining the scope of the Fair Labor Standards Act; Kirschbaum Co. v. Walling, 316 U.S. 517, 520, 521, 62 S.Ct. 1116, 86 L.Ed. 1638; but this pronouncement was made to enlarge rather than restrict the field in which the statute shall be effective, for it has also been said that the clear purpose of the Act was to extend federal control in this field throughout the farthest reaches of interstate commerce, and that once goods have entered the channels of interstate commerce, control over the entire movement of them is preserved until their interstate journey is ended. Walling v. Jacksonville Paper Co., 317 U.S. 564, 567-8, 63 S.Ct. 332, 87 L.Ed. 460.

The decisions of the Circuit Courts of Appeals are in accord. See Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778, 784, certiorari denied, 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130; James V. Reuter v. Walling, 5 Cir., 137 F.2d 315, 317-8, vacated on other grounds, 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001; Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331, 339, 341; A. H. Phillips v. Walling, 1 Cir., 144 F.2d 102, 104, affirmed, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876; Walling v. Consumers Co., 7 Cir., 149 F.2d 626, 629-30.

The judgment of the District Court will be reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.