James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

ROYAL BAKING COMPANY, Inc., Appellee.

No. 14991.

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1955.

Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., Bessie Margolin, Asst. Sol., Stuart Rothman, Sol., Morton J. Marks, Atty., U. S. Dept. of Labor, Washington, D. C., for appellant.

B. E. Hendricks and Hendricks & Hendricks, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

Appealing from a judgment which dismissed his suit to enjoin appellee from violating the minimum wage, overtime compensation, and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., plaintiff is here insisting that the judgment may not stand.

The trial court made no findings and wrote no opinion, but the essential facts, as appellant states them in his brief,[1] are not in dispute.

1. In substance they are:

Appellee is engaged at Miami, Florida, in the manufacture and production of bakery products which, except for a nominal quantity, it sells at wholesale. Approximately 100 employees are engaged in the operations of appellee, which does an annual business in excess of a million dollars.

Practically all of the raw materials used in the manufacture of appellee's products are regularly received from points located outside the State of Florida. They are received and stored at ap-

Putting forward three specifications of error,[2] and citing many cases [3] in support, appellant urges upon us that they are all well taken and that the judgment

pellee's warehouse and coldstorage freezer across the street from the bakery. While flour is delivered to the plant and spotted by the carrier, appellee's receiving clerk assists the carrier in the unloading operation by running "the float out there" and after the flour has been placed on the float, putting a jack under the float and helping to roll it inside.

Two employees, a receiving clerk and his assistant, are employed at the warehouse to perform duties relating to the receipt of all incoming goods, which are regularly received from out-of-state sources on an average of twice a week. Both the warehouse and the freezer have platform facilities to accommodate incoming shipments, and it is the duty of appellee's receiving clerks to see that the goods are unloaded. Before the goods can be unloaded, the receiving clerks "set down" floats on the unloading platform upon which the merchandise is placed. The goods are then checked, moved inside and spotted in the warehouse or freezer by the receiving clerks, who sometimes help in the physical unloading of the trucks although this last mentioned activity is not a part of their regular duties. When required, casual laborers are engaged to assist in carrying frozen foods into the freezer. These laborers work under the supervision of the receiving clerk, who keeps their time records. It is also the duty of the warehouse employees to inventory the goods in the warehouse once or twice a month. No exact records are kept of the hours worked by the receiving clerks and it is undisputed that they are not compensated at one and one-half times their regular rates of pay for hours worked in excess of 40 per week.

Appellee's office staff consists of four employees, including a bookkeeper, a payroll clerk, a cashier, and an accounts-receivable clerk. The bookkeeper is engaged daily in ordering all goods, writing letters, making out checks for payments and handling mail pertaining to the purchase and receipt of out-of-state goods, as well as keeping the books. The payroll clerk takes care of the payroll for the entire organization, including the route salesmen, while the cashier "checks in" all the route salesmen. No time records are kept for the office personnel.

Employees in appellee's bakery are engaged in the production of bread, rolls and pastry, packing and shipping the goods, cleaning the premises and utensils used in the production process, and maintaining the machinery used in production

and trucks used to deliver the goods. Truck drivers are also employed by appellee to deliver the baked goods to appellee's customers. Appellee failed to comply with the overtime provisions of the Act with respect to any of these employees.

Among the regular purchasers of substantial amounts of bakery products at wholesale from appellee is the Hot Shoppe Caterers, which uses the baked goods in the operation of two cafeterias and a snack bar for the exclusive use of employees of Eastern Airlines and Pan American World Airways at the Miami International Airport, and in the preparation of flight meals and sandwiches sold daily to airlines for the use of passengers and crew members on planes leaving Miami for various destinations outside of Florida.

Eastern Airlines purchases approximately 350 to 400 flight meals daily; Braniff Airlines purchases approximately 50 flight meals daily and Pan American World Airways purchases approximately 7,000 to 10,000 flight meals per month. All of the meals sold to Pan American and Braniff and a minimum of 50% of the meals sold to Eastern are consumed outside the State of Florida. Baked goods consumed on these flights include bread, dinner rolls, buns, sweet rolls, brownies, pies, cakes and cookies. For the year ending Oct. 31, 1953, Hot Shoppes purchased bakery products from appellee in the amount of $57,400.51 of which $17,220.15 worth was used for flight meals and sandwiches. Another purchaser of baked goods from appellee is the Atlantic Coast Line Railroad, which regularly purchased bread for sandwiches, but in smaller amounts than were used for the airlines.

2. These are: (1) The lower court erred in failing to hold that employees engaged in the purchase and receipt of extrastate goods are engaged in commerce within the meaning of the Act.

(2) The lower court erred in failing to hold that employees engaged in the production of goods, a part of which might reasonably be expected to leave the state, are engaged in the production of goods for commerce within the meaning of the Act.

(3) The lower court erred in dismissing the complaint and in denying the injunction prayed for in the complaint.

3. Among them are: Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395;

534

should be reversed and remanded with directions to grant the injunction.

■ On its part, appellee insists that the sales made to the Hot Shoppe, Inc., on which appellant bases its contention that appellee is engaged in the production of goods for commerce, aggregating, as they do, only $57,400.51, and especially the 30 percent of them which are processed for flight meals, are too insignificant for consideration.

As to appellant's contention that the employees engaged in the purchase and receipt of out-of-state goods are engaged in interstate commerce, appellee insists that, under the stated facts, when the employees of appellee receive them, they have come to rest in the state as a part of the body of goods therein and have ceased to be in interstate commerce.

■ We cannot agree with these views. We think, on the contrary, that the evidence wholly fails to support either of appellee's contentions. With respect to its *de minimis* claim, it is sufficient to point out that the same kind of claim, where the evidence was more favorable to the contention than it is here, was rejected by this court in three recently decided cases, Rolland v. United States, 5 Cir., 200 F.2d 678, at page 680; Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 210 F.2d 427; and Boisseau v. Mitchell, 5 Cir., 218 F.2d 734. With respect to its claim that the goods handled by the employees had come to rest in the state as a part of the body of goods therein and had ceased to be interstate commerce, it is sufficient to cite Stewart-Jordan Distributing Co. v. Tobin, supra, where this question was, upon full consideration, decided against a similar contention.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

James V. Reuter, Inc., v. Walling, 5 Cir., 137 F.2d 315; McComb v. Herlihy, 4 Cir., 161 F.2d 568; McComb v. Blue Star Auto Stores, 7 Cir., 164 F.2d 329; McComb v. W. E. Wright Co., 6 Cir., 168 F.2d 40, certiorari denied, 335 U.S. 854, 69 S.Ct. 83, 93 L.Ed. 402; McComb v. Wyandotte

Furniture Co., 8 Cir., 169 F.2d 766; Walling v. American Stores Co., 3 Cir., 133 F.2d 840; Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 210 F.2d 427; Tobin v. Celery City Printing Co., 5 Cir., 197 F.2d 228.