## WALLING v. WYANDOTTE FURNITURE CO.

### No. 4457.

District Court, W. D. Missouri, W. D.

June 12, 1947.

See also, D.C., 6 F.R.D. 295.

William S. Tyson, of Washington, D. C., Reid Williams, and John A. Weiss, both of Kansas City, Mo., for plaintiff.

W. F. Wilkinson and W. Raleigh Gough (of Wilkinson, French & Gough), both of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is an action to enjoin the defendant from the violation of certain provisions of the Fair Labor Standards Act, Section 201 et seq., Title 29 U.S.C.A. The provisions alleged to have been violated are those appertaining to overtime compensation for work hours beyond those limited by statute for labor in interstate commerce or in the production of goods for interstate commerce.

The defendant operates five furniture retail stores, four of which are located in Missouri and one in Kansas City, Kansas. It maintains warehouses at 1809 and 1810 Troost Avenue in Kansas City, Missouri and operates one of its retail stores at 1605 East 18th Street and another at 1019 East 18th Street, both in close proximity to its warehouses. The latter store is quite directly connected with its warehouse at

1810 Troost Avenue. In fact, it has a passage way from the second floor over a public alley and in addition there are doorways opposite each other between the buildings upon the level of said alley. At its retail store at 1019 East 18th Street it not only sells merchandise but it maintains a display room in its warehouse at 1810 Troost Avenue and many sales are made from that place. From its warehouses located as above stated, it distributes its merchandise to its retail stores for sale. The defendant purchases much of its goods direct from the manufacturer, which is a practice in the retail furniture business. However, whether direct from manufacturer, wholesaler, or jobber, its merchandise is assembled in its warehouses and then, as the demand may exist, it distributes said merchandise to its retail stores. The retail store in Kansas City, Kansas, obtains practically half of its merchandise by direct purchases from the manufacturer or wholesaler. When the Kansas store obtains merchandise from the warehouses it does so by sending its own delivery or pick-up trucks for such furniture.

The employees involved in this controversy, for the most part, work in the warehouses, and such employment consists of receiving the furniture at the warehouses, preparing it for resale by making such repairs as may be necessary, and aiding in its delivery to the pick-up trucks by the defendant's various retail stores. No merchandise is received by the warehouse employees for the purpose of making deliveries on order to any of the defendant's retail stores. Some, but not all, of the retail stores also maintain warehouses but these are not as large and commodious as the two above described.

One of the complaints is that the defendant has failed to keep records as prescribed by law for those engaged in interstate commerce or the production of goods in interstate commerce.

Among other defenses alleged is one provided by Section 213, Title 29 U.S.C.A., relating to exemptions, as follows: "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee engaged in any retail * * * establishment the greater part of whose selling * * * is in intrastate commerce; * * *." The evidence disclosed that a little more than 25% of the merchandise kept in the warehouses in Kansas City, Missouri, was delivered to and sold by the retail store in Kansas City, Kansas.

■ 1. Upon the admitted facts the defendant operates a retail establishment. Much of its merchandise for its five retail stores is assembled and stored at its warehouses in Kansas City, Missouri. Delivery of this merchandise to its warehouses is made by the independent contract haulers and, when once placed in the warehouse, the merchandise came to a complete rest. It remained there awaiting distribution to the defendant's several retail stores. The employees of defendant had nothing to do with the transportation in interstate commerce of the merchandise received at its warehouses. The evidence showed that the merchandise was taken out of commerce when it came to rest at the warehouse. In transporting the merchandise to the Kansas City, Kansas, retail stores it was not a commercial transaction for the reason that no sales were made in the process of transporting such merchandise. It was merely the removal of merchandise from the defendant's warehouses in Missouri to the defendant's retail store in Kansas. Even if the shipping of its own goods was commerce, it came to rest in Kansas City, Kansas, and was thereafter sold only in intrastate commerce. Each and every one of defendant's commercial transactions in the sale of its merchandise was intrastate commerce. Such sales were made either in Missouri or in Kansas.

■■ 2. Even in the important case of Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 337, 87 L.Ed. 460, both the Court of Appeals, as well as the Supreme Court, held that a wholesale business may be exclusively intrastate even though the wholesaler makes its purchases interstate. The Supreme Court points out that "the applicability of the Act is dependent on the character of the employees' work." This doctrine was originally announced in the well known case

of Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. It is to be noted that in the Jacksonville Paper Co. case, supra, both the Supreme Court and the Court of Appeals took occasion to say, "it is quite clear that the exemption in § 13(a) (2) was added to eliminate those retailers located near the state lines and making some interstate sales."

The case of Walling v. L. Wiemann Co., 7 Cir., 138 F.2d 602, 606, 150 A.L.R. 878, is precisely in point save only that the several retail stores operated by the defendants were located in one state. With reference to the exemptions, the court said: " * * * the words of the statute are plain and unambiguous. Subsection (a) provides that sections 206 and 207 of the Act shall not apply with respect to * * * 'any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *' It should be noted that the Administrator is not authorized to delimit by regulation any of the terms in this subsection * * *."

Again, the court said: "We are unable to perceive the source of appellant's authority for ruling that the word 'establishment,' as used in the Act, refers to a physical place of business and does not refer to a 'business or enterprise as applied to multiunit companies,' dealing wholly in intrastate business, and does not apply to appellee's warehouse and central executive offices, although the District Court found that such warehouse and offices constitute component and necessary parts of appellee's unitary business." The Supreme Court, on March 13, 1944, denied certiorari. 321 U.S. 785, 64 S.Ct. 782, 88 L.Ed. 1077.

■ 3. The case at bar is far different from that of A. H. Phillips, Inc. v. Walling, 1 Cir., 144 F.2d 102, 324 U.S. 490, 65 S.Ct. 807, 810, 89 L.Ed. 1095, 157 A.L.R. 876, although both the Court of Appeals as well as the Supreme Court said that the exemption claimed by the defendant in this case was made a part of the act "only because of the fear that Section 13(a) * * * in exempting employees regularly engaged in a 'local retailing capacity,' did not clearly exclude those employed by local retailers who are situated near state lines and who make occasional interstate sales."

The statute was made applicable to the defendant in Phillips Co. v. Walling for the reason, as stated by the court: "Here petitioner's warehouse and central office employees are performing wholesale duties in the very midst of the stream of interstate commerce. They constantly deal with both incoming and outgoing interstate shipments. Such tasks are completely unlike those pursued by employees of the small local retailers, who were the sole concern of congress in Section 13(a) (2). These duties, rather, are economically, functionally and physically like those of the independent wholesaler's employees who, when engaged in interstate commerce, are admittedly entitled to the benefits of the Act."

The very fact that the aggregate of sales by the several retail stores amount to a considerable sum would not take the defendant out of the classification as a retail establishment clearly within the exemption invoked by it.

■ 4. In addition to the above the testimony showed that the defendant long before the filing of this suit had conformed to the provisions of the law, even though not applicable to it. It regularly paid its warehouse employees overtime and kept records as required by the Act. The evidence does not disclose that it was coerced to do this by the activities of the government. Under such circumstances the question is moot and, since it is within the discretion of the court, an injunction should not issue. See Fleming v. Jacksonville Paper Co., 5 Cir., 128 F. 2d 395, loc. cit. 399.

The defendant has submitted a request for findings of fact and a statement of conclusions of law. These have been examined. They conform to this memorandum opinion and such requests are granted and adopted as the findings of fact of the court and as a statement of its conclusions of law.

The plaintiff has also submitted a request for findings of fact and a statement of conclusions of law. In its proposal the plaintiff does not separate its requested findings of fact from stated conclusions of law. Plaintiff's requests numbered 1, 2, 3, and 5

are granted; requests numbered 4, 5(2d), 6, 7, 8, 9, and 10 are refused.

In view of the above, the plaintiff is not entitled to a decree and the issues should be found for the defendant and it will be so ordered.