**BEGGS et al. v. KROGER CO.**
No. 13611.

Circuit Court of Appeals, Eighth Circuit.
April 28, 1948.

T. J. Gentry, of Little Rock, Ark., for appellants.

E. L. McHaney, Jr. of Little Rock, Ark. (Grover T. Owens, of Little Rock, Ark., on the brief), for appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This action was instituted by several employees and former employees of the Kroger Company to recover overtime wages under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The trial court found that appellants, who will be referred to as plaintiffs, were not engaged in the production of goods for interstate commerce and also found that they were engaged in interstate commerce, subjecting them to the jurisdiction of the Interstate Commerce Commission and exempting them from the overtime provisions of the Fair Labor Standards Act. Accordingly, that court dismissed plaintiffs' complaint on the merits. This appeal is from the judgment of dismissal.

The facts are not in dispute. The defendant Kroger Company operates a number of retail food stores in the State of Arkansas. It maintains a warehouse in Little Rock, Arkansas, through which passes approximately 60% of all merchandise sold by defendant in its retail stores in that state. Substantially all of the merchandise received at the warehouse is received from out of the State of Arkansas, is unloaded, placed in the warehouse, and later by company-owned trucks distributed to the various company-owned retail stores in Arkansas. About 18% of the merchandise sold by the defendant in its retail stores in Arkansas is manufactured or processed by defendant in plants located outside the state. Substantially all of this type of merchandise passes through the warehouse. It neither owns nor operates any manufacturing or processing plants within the state. All other merchandise sold by defendant is purchased by it. Approximately 89% of all merchandise sold in Arkansas is purchased, manufactured or processed outside the state and shipped to the retail stores in Arkansas. As heretofore stated, approximately 60% passes through the warehouse and the remainder of the 89% is sent direct to the stores from outstate sources. The remainder, or approximately 11%, of the merchandise sold at the retail stores is purchased in the State of Arkansas. A portion of the latter passes through the warehouse and the remainder of the 11% is delivered directly to the stores by the vendors. All of the merchandise purchased, manufactured or processed by defendant outstate and shipped to the warehouse is purchased, manufactured, or processed for sale in the defendant's retail stores in Arkansas. The defendant does

not operate the warehouse as a wholesale grocery but delivers all merchandise from the warehouse to its stores on scheduled trips each week.

Plaintiffs are truck drivers engaged in delivering the merchandise from the warehouse in trucks owned by defendant to defendant's retail stores in Arkansas. Plaintiffs seldom assist in loading their trucks at the warehouse but do unload them at the retail stores. On return trips to the warehouse from the stores they deliver empty bottles and slow moving merchandise to the warehouse for shipment outside the state. In making deliveries to and from the warehouse, plaintiffs do not go outside the State of Arkansas.

Plaintiffs were paid an hourly rate in excess of the minimum rates fixed by the Fair Labor Standards Act. It is stipulated that if they had been paid one and one-half times their hourly wage for all hours worked over 40 during any one work week, they would all have received an aggregate total of $9,261.06 in excess of what they were paid.

■ If the Fair Labor Standards Act applies, Section 7(a) (3) thereof, 29 U.S. C.A. § 207(a) (3), provides for the payment of one and one-half times the regular wage for all hours over 40 which plaintiffs worked during any one work week.[1] But the Fair Labor Standards Act will not apply, although plaintiffs may have been engaged in the production of goods for commerce within the meaning of that Act,[2] if plaintiffs were employees with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to Sections 202 and 204 of the Motor Carrier Act of 1935, 49 U.S.C.A. §§ 302 and 304.[3]

·[2] The defendant was not a common carrier or a contract carrier, but it was a

---

[1] "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * for a work week longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

[2] See note (1) supra, and

Section 3(j) of the Fair Labor Standards Act provides as follows:

"For the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." 29 U.S.C.A. § 203 (j).

[3] Section 13(b) (1) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(b) (1), which exempts employees with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service is as follows:

"(b) The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maxi-

mum hours of service pursuant to the provisions of Section 304 of Title 49."

That part of the Motor Carrier Act of 1935 which fixes the scope of the power of the Interstate Commerce Commission referred to in the above-quoted section of the Fair Labor Standards Act is as follows:

Section 302 Title 49 U.S.C.A. "(a) The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission."

Section 304 Title 49 U.S.C.A. "(a) Powers and duties generally. It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with re-

private carrier of property by motor vehicle if defendant was engaged in the transportation of goods in interstate commerce for the purpose of sale or in furtherance of any commercial enterprise. It is readily obvious that defendant was engaged in the transportation of goods for sale and in the furtherance of a commercial enterprise, hence, the instant question is narrowed to the determination of whether it was engaged in the transportation of goods in interstate commerce. The conclusion is inescapable that it was. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331. Practically all of the goods the defendant transported to its retail stores in Arkansas were processed, manufactured or purchased outstate for the specific purpose of being moved to the retail stores for sale. That part of the goods which went through the warehouse did not "come to rest" at the warehouse. The warehouse was merely a convenient instrumentality for the division of the shipments coming to it and the continuation of the movement of each part to the retail stores. The facts in this case distinguish it from cases such as Atlantic Coast Line R. Co. v. Standard Oil of Ky., 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270. Here the defendant knew when the shipments began outstate that all of them were destined to the retail stores. The warehouse was not a wholesale establishment and none of the goods that entered it were resold.

 But plaintiffs contend that the

spect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. In the event such requirements are established, the term 'motor carrier' shall be construed to include private carriers of property by motor vehicle in the administration of sections 304(c), 305, 320, 321, 322(a), (b), (d), (f), and (g), and 324 of this chapter."

\* \* \* \* \* \* \* \*

"(4a) To determine, upon its own motion, or upon application by a motor carrier, a State board, or any other party in interest, whether the transportation in interstate or foreign commerce performed by any motor carrier or class of motor carriers lawfully engaged in operation solely within a single State is in fact of such nature, character, or quantity as not substantially to affect or impair uniform regulation by the Commission of transportation by motor carriers engaged in interstate or foreign commerce in effectuating the national transportation policy declared in the Interstate Commerce Act. Upon so finding, the Commission shall issue a certificate of exemption to such motor carrier or class of motor carriers which, during the period such certificate shall remain effective and unrevoked, shall exempt such carrier or class of motor carriers from compliance with the provisions of this chapter, and shall attach to such certificate such reasonable terms and conditions as the public interest may require. At any time after the issuance of any such certificate of exemption, the Commission may by order revoke all or any part thereof, if it shall find that the transportation in interstate or foreign commerce performed by the carrier or class of carriers designated in such certificate shall be, or shall have become, or is reasonably likely to become, of such nature, character, or quantity as in fact substantially to affect or impair uniform regulation by the Commission of interstate or foreign transportation by motor carriers in effectuating the national transportation policy declared in the Interstate Commerce Act. Upon revocation of any such certificate, the Commission shall restore to the carrier or carriers affected thereby, without further proceedings, the authority, if any, to operate in interstate or foreign commerce held by such carrier or carriers at the time the certificate of exemption pertaining to such carrier or carriers became effective. \* \* \* "

A private carrier is defined in Section 303(a) (17) Title 49 U.S.C.A. as follows:

"(17) The term 'private carrier of property by motor vehicle' means any person not included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle', who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise."

fact that the operations of the drivers of the trucks were wholly within the State of Arkansas should have decisive weight upon the question of whether that part of the defendant's transportation activity which plaintiffs performed was in interstate commerce. That fact is not decisive when, as pointed out, the plaintiffs' activities constituted a part of a continuous movement of freight from points outside of the State of Arkansas to the retail stores.

The plaintiffs being engaged in interstate commerce, the question remains as to whether Section 13(b) (1) of the Fair Labor Standards Act, heretofore quoted in the margin, exempts them from the overtime requirements of Section 7 of that Act. The exemption applies to "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service." It is not the need for regulation of a transportation activity by the Interstate Commerce Commission which determines the applicability of the exemption clause above-quoted. It is the existence or non-existence of the power to regulate which is decisive. Southland Gasoline Co. v. Bayley, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244. The Interstate Commerce Commission need not regulate private carriers. Its duty with reference to the regulation of such carriers is dependent upon a finding by the Commission that need therefor exists. Southland Co. v. Bayley, supra; Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131. In that respect the Commission's duty is different from that which has been placed upon it with reference to common carriers and contract carriers. The Commission is given the sole authority to determine that need. Southland Co. v. Bayley, supra; Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931. As pointed out in Levinson v. Spector Motor Service, 330 U.S., loc. cit. 665, 67 S.Ct. loc. cit. 940, the Commission has found that "there is need for Federal regulation of private carriers of property to promote safety of operation of motor vehicles used by such carriers in the transportation of property in interstate or foreign commerce." In Morris v. McComb, supra, 332 U.S. loc. cit. 436, 68 S.Ct. loc. cit. 138, the Supreme Court directs attention to the facts that an *intra-state motor carrier* may secure an exemption from regulation by the Interstate Commerce Commission upon application to that Commission and a proper showing therefor. But even if the exemption from regulation by the Commission be granted, the power of regulation by the Commission remains. And it is the power of regulation which determines the applicability of the exemption clause of the Fair Labor Standards Act.[4]

Both the Fair Labor Standards Act and the Motor Carrier Act of 1935 cannot apply simultaneously. As the Supreme Court said in Levinson v. Spector Motor Service, 330 U.S. at page 661, 67 S.Ct. at page 938, "There is no necessary inconsistency between enforcing rigid maximum hours of service for safety purposes and at the same time, within those limitations, requiring compliance with the increased rates of pay for overtime work done in excess of the limits set in § 7 of the Fair Labor Standards Act. Such overlapping, however, has not been authorized by Congress and it remains for us to give full effect to the safety program to which Congress has attached primary importance, even to the corresponding exclusion by Congress of certain employees from the benefits of the compulsory overtime pay provisions of the Fair Labor Standards Act." There is no logical escape from the conclusion reached by the trial court that plaintiffs were engaged in interstate commerce in an employment which Congress has given power to the Interstate Commerce Commission to regulate and that, therefore, plaintiffs' employment is exempt from the application of the overtime provisions of the Fair Labor Standards Act.

Since plaintiffs are exempt from the application of the Fair Labor Standards Act, it is unnecessary to consider the question of whether they were engaged in the production of goods for interstate commerce within the meaning of that Act.

The judgment is affirmed.

[4] Southland Co. v. Bayley, et al., 319 U. S. 44, 63 S.Ct. 917, 87 L.Ed. 1244; Levinson v. Spector Motor Service, 330 U.S. 649, loc.cit. 661, 67 S.Ct. 931.