**McCOMB, Administrator of Wage and Hour Division, U. S. Department of Labor, v. WYANDOTTE FURNITURE CO.**

No. 13674.

Circuit Court of Appeals
Eighth Circuit.

Aug. 28, 1948.

John A. Weiss, Atty., Department of Labor, of Kansas City, Mo., and Frederick U. Reel, Atty., Department of Labor, of Washington, D. C. (William S. Tyson, Sol., Bessie Margolin, Asst. Sol., and Helen Grundstein, Atty., Department of Labor, all of Washington D. C., and Reid Wiliams, Regional Atty., Department of Labor, of Kansas City, Mo., on the brief), for appellant.

W. Raleigh Gough, of Kansas City, Mo. (W. F. Wilkinson, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

Wyandotte Furniture Company operates five retail furniture stores. Two are located in Kansas City, Missouri, one in Independence, Missouri, one in Jefferson City, Missouri, and the other in Kansas City, Kansas.

The Company also maintains two warehouses for the purpose of keeping its stores supplied with merchandise. Both are located in Kansas City, Missouri. All the stores get goods regularly from the warehouses, as often at least as once a week. The warehouses have a single set of employees, consisting of five workmen and a foreman. Over 70 per cent of the goods received and handled at the warehouses comes directly from without the State of Missouri, and more than one-fourth thereof is distributed from the warehouses to the store located in Kansas City, Kansas. The Company maintains a central office

in a rear room of one of the Kansas City, Missouri, stores, and a bookkeeper there keeps the records on all purchases made of goods, their receipt by the warehouses, and their transfer from the warehouses to the various stores.

The Administrator of the Wage and Hour Division brought suit to enjoin the Company from violating the overtime and record-keeping requirements of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a) (2) and (a) (5), as to the five warehouse workmen and the bookkeeper referred to above.[1] The trial court denied an injunction and dismissed the complaint, Walling v. Wyandotte Furniture Co., D.C.W.D.Mo., 72 F.Supp. 98, and the Administrator has appealed.

The duties of the warehouse workmen, as set out in the court's findings, consisted in moving the goods into the warehouses from the platform, to which they were hauled from the freight cars by commercial trucking firms; in uncrating the goods; in assembling such goods as came "knocked down"; in repairing any minor damages to the goods that had occurred in transit; in placing the goods in their respectively allotted spaces in the warehouses; and in collecting and taking such part of the goods to the warehouse platform as from time to time was to be transferred to each of the various stores.

The trial court held that all of the goods "came to rest at the warehouse" and were thereby "taken out of commerce"; that in none of their tasks were the employees involved "engaged in commerce or in the production of goods for commerce," except in "preparing for delivery the part of such goods transferred to Kansas and the keeping of records pertaining thereto"; that the latter tasks could not be said to constitute a substantial part of the work of these employees and therefore might be ignored; that furthermore all of the five stores constituted but a single enterprise, with the warehouses as incidents or adjuncts of the enterprise, and the whole thereof represented together a retail establishment, which was within the exemption of section 13(a) (2), 29 U.S.C.A. § 213(a) (2); that, even if the five stores should be regarded as separate establishments, the two warehouses [one of which was situated in the same block as the Company's principal Kansas City, Missouri, store, with the back ends of the buildings opposite each other on a public alley, with their rear doors directly across from each other, and with the second floors of the two buildings connected by a passageway over the alley; and the other of which was situated across the street from the first warehouse, in the next block, but was not in any way physically connected with either of the other two buildings] would still constitute a retail establishment in relation to and as a part of the Company's principal Kansas City, Missouri, store; and finally that "This suit is a moot case * * * for the reason that, at the time of filing this suit, defendant was not violating any of the provisions of the Act * * *."

We think the court erred in these conclusions and in its dismissal of the suit on the basis thereof.

Goods purchased by a chain store system outside the state, as intended stock for its various stores, are not taken out of the stream of commerce by being sent temporarily to a warehouse, as a means of facilitating their systematic distribution to the several stores in accordance with regular needs. See Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331, 339, 340; Beggs v. Kroger Co., 8 Cir., 167 F.2d 700, 703; Mid-Continent Petroleum Corporation v. Keen, 8 Cir., 157 F.2d 310; Walling v. American Stores Co., 3 Cir., 133 F.2d 840, 845, 846; Walling v. Goldblatt Bros., 7 Cir., 152 F.2d 475; Montgomery Ward & Co. v. Antis, 6 Cir., 158 F.2d 948, 951.

All the merchandise of the warehouses, when it began its interstate journey, was destined, and only destined, as goods for the retail stores of the chain, and the warehouses were simply an instrumentality

---

[1] The Administrator contended in the trial court that the warehouse foreman and the treasurer of the Company also were within the Act, but on the appeal he has limited his contention to the five warehouse workmen and the bookkeeper.

adopted by the Company, as a regular process, for economically and conveniently achieving that result. Cf. Beggs v. Kroger Co., supra, 8 Cir., 167 F.2d 700, 703. As the Supreme Court said in Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332, 335, 87 L.Ed. 460, "if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destination, they remain 'in commerce' until they reach those points."

In this connection, it must be borne in mind that the purchase of a supply of goods by a chain store system for its established retail stores and the handling of the distribution of such goods regularly to the stores through a warehouse system do not have an identicalness with all the aspects of an independent wholesaling business. Thus, as pointed out in the Jacksonville Paper Co. case, an independent wholesaler may order goods for general wholesaling purposes, which have such an uncertainty of any immediate destination, and some of which may never in fact get out of the wholesale house at all, that they are lacking in "that practical continuity in transit necessary to keep a movement of goods 'in commerce' within the meaning of the Act," and so must be regarded as having "come to rest" in the wholesale house. 317 U.S. at page 570, 63 S.Ct. at page 336.

■ On the basis of what we have said, it could not properly be held that the warehouse workmen in the present situation were not engaged in commerce. But apart from this general aspect, the warehouse workmen and the bookkeeper were in any event, as the trial court recognized, "engaged in commerce or in the production of goods for commerce" in their duties of "preparing for delivery the part of such goods transferred to Kansas and the keeping of records pertaining thereto." And in its proper perspective, even this work could not, as the trial court seemed to think, be regarded as so unsubstantial in amount as to be entitled to be ignored.

Over one-fourth of all the goods received at the warehouses was, as we have indicated, distributed to the Kansas store. The work of the warehouse employees in re-lation to these goods could not be measured in terms of simply wheeling them to the platform to be hauled away, as the court appears to have done. As the goods went to the Kansas store, all the work done by the warehouse workmen on them (moving them in, uncrating them, setting them up, repairing them, putting them in their proper space, taking them out to the platform, and any other handling) necessarily had an economic significance in relation to their being made a part of the stock of the Kansas store and plainly constituted the production of goods for commerce within the definition of section 3(j) of the Act, 29 U.S.C.A. § 203(j). Cf. Hertz Drivurself Stations v. United States, 8 Cir., 150 F.2d 923, 926; Walling v. Friend, 8 Cir., 156 F.2d 429, 430, 431; Meeker Cooperative Light & Power Ass'n v. Phillips, 8 Cir., 158 F.2d 698, 699.

Thus viewed, the activities of the warehouse workmen in handling more than one-fourth of the goods of the warehouses for the Kansas store could not be said to be unsubstantial. Nor could the work of the bookkeeper covered by the Act be regarded as unsubstantial, when the record-keeping task was considered in relation to the purchase, receipt and transfer of all the interstate goods, and such goods were viewed as being still in commerce until they came to rest in the several stores.

■■ The trial court also clearly erred in its view that the five stores and the warehouses could be regarded as constituting together one retail establishment for purposes of the exemption of section 13 (a) (2) of the Act, 29 U.S.C.A. § 213(a) (2). The term "retail establishment," as used in that section, means "a distinct physical place of business," and each store of a chain store system therefore must be viewed as a separate establishment. A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 496, 65 S.Ct. 807, 810, 89 L.Ed 1095, 157 A.L.R. 876. Nor could the warehouses here, in their function of receiving goods for and distributing them to the Company's various stores, be held to be within the exemption of the specific retail store near which they were located and which was in fact directly connected to one of the ware-

770

houses by a passageway over an alley. Id., and see also Fred Wolferman, Inc., v. Gustafson, 8 Cir., 169 F.2d 759, this date decided; Walling v. Goldblatt Bros., 7 Cir., 152 F.2d 475. Nor would the fact that part of the space in the warehouse was used as a display section by this store for some of its goods bring the warehouse workmen within the exemption of the store, in their tasks of performing the function of the warehouses in receiving and distributing goods generally to the various stores. And the fact that customers of the retail store were sometimes taken over to the warehouse by clerks of the store and permitted to make a selection from the warehouse floor similarly would not bring the general receiving and distributing functions of the warehouses for the chain store system within the exemption of the single store.

■ The trial court was in error too in holding that the fact that the Company was not violating the Act at the time the suit was filed would render the question of the Administrator's right to an injunction moot. The mere cessation of a violation does not render such a case moot. Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331, 334, 335.

■ In the present situation, the Company had at all times asserted and still asserts that it is not subject to the provisions of the Act. It admits that, in presently making payment of overtime compensation to its warehouse workmen on the basis provided in the Act, it is doing so solely because of a union contract made with its employees through collective bargaining. It undertakes to give no assurance of what it will do on the expiration of the contract. And as a matter of fact, while the court held that the Company was no longer violating the Act, the record shows only that it is making payment of proper overtime compensation to its warehouse workmen. There is no showing that violations have ceased with respect to the bookkeeper in the central office.

■ Where the legality of an employer's previous acts remains in controversy under the Fair Labor Standards Act, the Administrator ordinarily should be granted an injunction, even though the employer has ceased the violation, unless the trial court soundly is convinced from the situation that there is no reasonable probability of a recurrence of the acts. And where a violation still persists at the time of the trial and is not inadvertent, an injunction clearly should be granted.

The judgment is reversed and the cause is remanded for further proceedings.