James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

FABER INDUSTRIES, INC., a Corporation, Defendant.

Civ. A. No. P-2091.

United States District Court
S. D. Illinois, N. D.
Oct. 25, 1960.

Ruth Provus, Atty., U. S. Dept. of Labor, Chicago, Ill., for plaintiff.

Willard B. Gaskins, Robert D. Morgan, Davis, Morgan & Witherell, Peoria, Ill., for defendant.

MERCER, Chief Judge.

This action which was instituted by the Secretary of Labor involves a rather narrow legal question. By his complaint, plaintiff prays that the defendant, Faber Industries, Inc., be enjoined from violating the overtime pay provisions of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 207.[1] Defendant, by its answer, claims that it is exempt from the operation of that statute with respect to the employees involved in this litigation under the provisions of Section 13 (b) (1) of the Act. 29 U.S.C.A. § 213(b) (1). The facts are stipulated and the only question presented for decision is one of law.

The following summary of material stipulated facts will serve as findings of fact and to place the legal issue in focus. Defendant is engaged in the business of purchasing, collecting and rendering meat scraps and dead animals for the production of grease, cracklings, animal feeds, and cured hides in interstate commerce. Its central office, and the nerve center of its total business activity is located in Peoria, Illinois. It operates its business through ten separate plants, nine of which are located in the State of Illinois. It operates six plants, all in the State of Illinois, which are engaged in the rendering and processing of meat scraps and dead animals for the production of grease and cracklings. The grease produced is sold on the open market. The cracklings produced are used, in part, by defendant for the production of feed. The balance is sold on the open market. Defendant also operates two plants for the production of animal feed, one of which is located in Illinois, and the other in Missouri, and two hide plants for the curing and processing of hides, both of which are located in Illinois. It is agreed by the parties that each of these plants is engaged in the production of goods for interstate commerce, as that term is used in the Act.

A total of 210 employees are employed by defendant at its various plants, many of whom work in excess of 40 hours per week. Employees engaged in production and office clerical work receive overtime pay for hours worked in excess of 40 per week. Management employees are exempt from the overtime pay provisions of the Act. There is no issue presented with respect to any of such employees.

The issue presented involves employees engaged by defendant as scrap drivers. A total of 20 persons are employed in that classification, each of whom customarily operates a truck on a specifically assigned route, gathering meat scraps from butchers, slaughter houses and meat markets for delivery to one of defendant's six rendering plants, or, in some instances, to a collection point designated for one of the six plants. All scrap delivery points are located in Illinois.

Thirteen of the scrap drivers drive trucks owned by defendant which they must service and park at service facilities and points designated by defendant.

---

1. "(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Seven operate their own trucks and control the servicing, maintenance and parking of their respective vehicles without direction from defendant. Drivers who drive a defendant-owned truck are paid a weekly salary plus a commission on poundage of scrap collected. Those who operate their own truck are paid on a mileage basis, plus a like commission. All are employed for work weeks in excess of 40 hours, but receive no additional compensation for hours worked in excess of 40 per week.

The point of contention is narrowed down to 15 employees by the circumstance that five of the scrap drivers regularly operate routes which cross state lines. Plaintiff concedes that these five men are engaged in transportation in interstate commerce, are subject to control by the Interstate Commerce Commission as to qualifications and maximum hours of service and are exempt from the operation of the provisions of Section 7 of the Fair Labor Standards Act.

Each of the remaining fifteen scrap drivers regularly operates a scrap collection route which is wholly within the State of Illinois, collecting scrap for delivery at points within that State.

The nature of defendant's base product, meat scraps, requires that the scraps be collected frequently and regularly from the customer. That necessity, in turn, requires that provisions be made to operate each route regularly during employee vacations and in emergencies. Such situations are handled by temporary assignment of plant or managerial personnel to the affected route, or another scrap driver from the same plant or delivery point may double-up and handle two routes temporarily. Defendant's plants are quite widely dispersed in Illinois and it is impractical and extremely rare for a temporary transfer of a scrap driver outside the area normally served by his plant or delivery point. There have been occasions, however, when drivers have been temporarily transferred from one plant or delivery point which serves an area wholly within Illinois to another plant or delivery point which likewise serves an intrastate area.

The Interstate Commerce Commission has notified defendant that it asserts jurisdiction over defendant's scrap driver employees under the provisions of Section 204(a) (3) of the Motor Carrier Act of 1935, as amended, 49 U.S.C.A. § 304(a) (3).[2] There has been, however, no definitive interpretation by the Commission of the extent of the jurisdiction asserted, i. e., whether such jurisdiction extends to all employees in the classification of scrap drivers or only to those drivers who are actually engaged in interstate transportation of scrap.

Defendant is a private carrier of property by motor vehicle within the definition of Section 203(a) (17) of the Motor Carrier Act with respect to its scrap collection operations, at least, to the extent that the operation involves interstate transportation of the scrap. 49 U.S.C.A. § 303(a) (17).[3] See Beggs v. Kroger Co., 8 Cir., 167 F.2d 700; I. C. C. v. Tank Car Oil Corp., 5 Cir., 151 F.2d 834.

As stipulated by the parties, the only issue presented for decision is whether defendant's scrap drivers are exempt from the overtime provisions of the Fair Labor Standards Act under the provi-

2. "It shall be the duty of the Commission * * *

  *   *   *   *   *

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. * * *"

3. "(17) The term 'private carrier of property by motor vehicle' means any person not included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle', who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, * * *, when such transportation is for the purpose of sale, * * *, or in furtherance of any commercial enterprise."

sions of Section 13(b) (1) [4] of that Act, with reference to Section 204(a) (3) of the Motor Carrier Act.

Within the context of the relevant facts as hereinabove found and summarized, I think the issue must be stated more narrowly and precisely. Must a "private carrier of property by motor vehicle," as that phrase is defined in Section 203(a) (17) of the Motor Carrier Act, who is exempt from the operation of the overtime provisions of the Fair Labor Standards Act under the provisions of Section 13(b) (1) of that Act, with reference to Section 204(a) (3) of the Motor Carrier Act, as to employment of a part of its employees who are engaged in a general work classification requiring the operation of a motor truck, comply with the overtime provisions of the Act with respect to its employment of other employees engaged in the same general work classification whose customary duties do not entail the interstate transportation of property?

Plaintiff takes the position that the jurisdiction of the Commerce Commission, as it reaches defendant's scrap collection operations, must be determined on an individual employee basis. Defendant contends, on the other hand, that the Commerce Commission has, and has asserted, the power to control its scrap collection operations because those operations partake, in part, of interstate transportation, and that the Commission's power extends to its whole scrap collection operations.

The standard for decision of the issue is the interpretation of section 204 (a) (3) of the Motor Carrier Act. "It is only to the extent that the Interstate Commerce Commission does *not* have power to establish qualifications and the maximum hours of service pursuant to said § 204, that the subsequent Fair Labor Standards Act has been made applicable or its Administrator has been given congressional authority to act." Levin-

son v. Spector Motor Service, 330 U.S. 649, 677, 67 S.Ct. 931, 945, 91 L.Ed. 1158. The existence of power in the Interstate Commerce Commission to assert jurisdiction under § 204 of the Motor Carrier Act is determinative, irrespective of whether the Commission has actually asserted or exercised that power in a specific employment situation. Ibid, 330 U.S. at pages 678, 679, 67 S.Ct. at page 946. Concurrent jurisdiction of the Secretary of Labor under the Fair Labor Standards Act and the Interstate Commerce Commission under section 204 of the Motor Carrier Act over the same employees cannot exist. Morris v. McComb, 332 U.S. 422, 437–438, 68 S.Ct. 131, 92 L.Ed. 44.

In the Morris case, the Court held a common carrier exempt from the provisions of section 7 of the Fair Labor Standards Act upon proof that the affected employees spent approximately 4% of their work time, distributed throughout the year, engaged in the interstate transportation of commodities. After noting the fact of the interstate character of a part of the carrier's operations, the Court said, in part:

"We hold that the Commission has the *power* to establish qualifications and maximum hours of service, pursuant to the provisions of § 204 of the Motor Carrier Act, for the entire classification of petitioner's drivers and 'mechanics' and it is the existence of that power (rather than the precise terms of the requirements actually established by the Commission in the exercise of that power) that Congress has made the test as to whether or not § 7 of the Fair Labor Standards Act is applicable to these employees." Morris v. McComb, 332 U.S. at page 434, 68 S.Ct. at page 137.

In Rogers Cartage Co. v. Reynolds, 6 Cir., 166 F.2d 317, 3 A.L.R.2d 1090, the court held, on the authority of Morris, that a carrier was exempt from the oper-

---

4. "(b) The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 29; * * *."

ation of section 7 of the Fair Labor Standards Act with respect to certain employees who had spent 39 weeks out of a period of 55 weeks engaged in wholly intrastate transportation of commodities.

Neither of the cited cases is precisely in point on the issue here presented. They do, however, point up the principle that a minimal amount of time devoted by a carrier to transportation of commodities in interstate commerce is sufficient to establish the existence of jurisdiction in the Commerce Commission to regulate and control the carrier's operations, to the exclusion of control asserted by the administrator of the wages and hours provisions of the Fair Labor Standards Act.

Section 204(a) (3) of the Motor Carrier Act grants power to the Commission to prescribe for every private carrier reasonable qualifications and maximum hours of employment as the Commission shall deem necessary to promote safety of operations. By the definition of "private carrier" contained in section 203(a) (17) of the Act, that power would extend to a person in defendant's position who transports any part of self-owned property interstate. The grant of power of section 204(a) (3) is sufficiently broad to reach such person's whole transportation operation, both that part which is interstate and that part which is wholly intrastate.

In my opinion, a carrier such as defendant is either fish or fowl under the Motor Carrier Act, not half fish and half fowl. If the Commission has power to control any part of a carrier's operations, it has power to extend its control, through the carrier, over all employees who work within the controlled classification. Cf., Morris v. McComb, supra, 332 U.S. at page 434, 68 S.Ct. at page 137. Any other interpretation of section 204(a) (3) would lead to a chaotic situation for all concerned. Congress has deemed that administrative regulation is necessary in two conflicting areas which affect this defendant's position, but has provided, where actual conflict exists, that the jurisdiction of the Interstate Commerce Commission is paramount to

that granted to the Secretary of Labor under the Fair Labor Standards Act. Stability of administrative control is necessary under such circumstances. If, in a jurisdictional dispute, the power of the Commerce Commission must be determined piecemeal by a factual investigation as to the precise activities of each of a number of defendant's employees who are engaged in the same general work classification, it is my opinion that neither the defendant, nor the Commerce Commission, nor the Secretary of Labor can effectively operate.

 I conclude, as a matter of law, that the Commerce Commission has the power under section 204(a) (3) of the Motor Carrier Act to fix qualifications and maximum hours of employment for all of defendant's scrap drivers and that the overtime pay provisions of the Fair Labor Standards Act do not apply to any of such employees.

Judgment is entered dismissing the complaint.