*259 NYGAARD, J.,
concurring in judgment.
Although I concur with the judgment reached by the majority, I write separately because I disagree with the majority’s analysis in Part III.B. of the Opinion. In that Part, the majority seeks guidance from regulations and case law as to whether Appellees are engaged in “interstate commerce.” That inquiry, although scholarly and interesting, is not necessary to resolve this appeal.
Rather than probing the contours of interstate commerce within the meaning of the Motor Carrier Act, I would hold the plain language of the Act’s jurisdictional statute to be dispositive. That statute gives the Secretary of Transportation the authority to establish qualifications and maximum hours for employees of a motor carrier — thereby triggering the Motor Carrier Act exemption — only “to the extent that passengers, property, or both, are transported by motor carrier ... between a place in ... a State and a place in another State.” 49 U.S.C. § 13501. As PTC ACCESS drivers, Appellees transport individuals from locations within Pennsylvania to other locations within Pennsylvania, without crossing state lines. They do not transport passengers “between a place in ... a State and a place in another State.” Id. Thus, the Secretary of Transportation has no power to establish Appellees’ qualifications and maximum hours. Id. Absent this power, the Motor Carrier Act exemption does not apply and PTC must comply with the Fair Labor Standards Act’s overtime pay rules. See 29 U.S.C. § 213(b)(1).
Neither the District Court in its order granting partial summary judgment, nor the parties in their briefs before us, relied upon the plain language of 49 U.S.C. § 13501. They assume instead, and the majority follows suit, that it is necessary to interpret the term “interstate commerce.” This assumption is understandable, as it is derived from language in a Supreme Court opinion. In determining the applicability of the Motor Carrier Act exemption under different circumstances, the Court in Levinson v. Spector Motor Service held that the Interstate Commerce Commission (now the Secretary of Transportation) has the power to establish qualifications and maximum hours of service for employees of a motor carrier whose employment “affects the safety of transportation ... in interstate commerce.” 330 U.S. 649, 687, 67 S.Ct. 931, 91 L.Ed. 1158 (1947) (emphasis added). Relying on this language, the parties focus on the definition of “interstate commerce” and attempt to discern its meaning by referring to case law and regulatory definitions. The majority, in Part III.B. takes a similar approach — one I believe to be unnecessary.[11] The plain language of the Motor Carrier Act’s jurisdictional statute governs the Secretary of Transportation’s authority to establish Ap- *260 pellees’ qualifications and maximum hours of service. It is unambiguous and does not contain the term “interstate commerce.” To the extent the definition of that term does have any relevance here, its proper understanding is found in a source not previously considered: the United States Code.
In 1947, the year the Supreme Court decided Levinson, the Motor Carrier Act contained a statutory definition of interstate commerce. See 49 U.S.C. § 303(a)(10) (1940). It would appear that when the Court used the term, it did so pursuant to its understanding of the then-existing statutory definition. At the time the Court decided Levinson, the Motor Carrier Act defined “interstate commerce” as “commerce between any place in a State and any place in another State ... whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water.” Id. It is worthy of note that this definition is similar, albeit not identical, to the present day Motor Carrier Act jurisdictional statute found at 49 U.S.C. § 13501, which was added to the Act after the Court decided Levinson. But whether Appellees’ employment would fall within the 1947 statutory definition is irrelevant, as that definition no longer exists in the United States Code. What does exist is the present day jurisdictional statute, the plain language of which resolves this appeal without the need for resort to regulatory definition or case law.
Because I would decide this issue upon the plain language of 49 U.S.C. § 13501, I do not join Part III.B. of the Opinion. With respect, I concur in the judgment.

. I recognize that I am rather lonesome in this view, in that other Courts of Appeal have also explored the scope of the Motor Carrier Act exemption via inquiry into the presence or absence of interstate commerce. See Bilyou v. Dutchess Beer Distrib., Inc., 300 F.3d 217, 223 (2d Cir.2002); Klitzke v. Steiner Corp., 110 F.3d 1465, 1470 (9th Cir.1997); Foxworthy v. Hiland Dairy Co., 997 F.2d 670, 672 (10th Cir.1993); Beggs v. Kroger Co., 167 F.2d 700, 702-03 (8th Cir.1948). In so doing, the Courts in each of these cases relied upon Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943). In Walling, the Supreme Court held that purely intrastate acts may constitute interstate commerce within the meaning of the Fair Labor Standards Act if the intrastate acts are part of a "practical continuity of movement" between states. Id. at 568, 63 S.Ct. 332. As the majority points out, however, the contours of interstate commerce under the Motor Carrier Act and the Fair Labor Standards Act are different. See 29 C.F.R. § 782.7(a). Thus, Walling has no bearing upon the scope of the Motor Carrier Act exemption. The Courts of *260 Appeal relying upon the case to determine the