994

## DOMENECH v. PAN AMERICAN STANDARD BRANDS, Inc.

No. 4037.

Circuit Court of Appeals, First Circuit.

March 2, 1945.

Benicio F. Sanchez Castano, and Otero Suro & Otero Suro, all of San Juan, Puerto Rico, on the brief, for appellant.

Ryder Patten, of San Juan, Puerto Rico (James R. Beverley, of San Juan, Puerto Rico, of counsel), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and SWEENEY, District Judge.

MAHONEY, Circuit Judge.

This action was brought by the plaintiff to recover unpaid overtime compensation, liquidated damages, costs and reasonable attorney's fees under the provisions of § 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219. The case was heard by the court without a jury. At the close of the plaintiff's evidence the defendant moved for a dismissal on the ground that the testimony failed to show that the activities of the plaintiff were within the coverage of the Act. The motion was granted, and from the entry of the judgment of the District Court the plaintiff has taken this appeal.

From the answers made to the interrogatories propounded by the plaintiff the following appears: The defendant, Pan American Standard Brands, Inc., is a Delaware corporation with its principal office in New York. It is a selling corporation for Standard Brands, Inc., with branches in San Juan, Puerto Rico, and other places. It is engaged in the distribution and sale of yeast, baking powder, desserts, tea and all kinds of products for bread making, all of which products are manufactured or processed by Standard Brands, Inc. The defendant ships products to Puerto Rico as they are ordered. The San Juan branch determines its needs each week by checking the records of sales against inventories and then forwards its orders to the New York office. During the period in question it ordered and received six to eight shipments a month, averaging in value from $14,500 to $15,000 a month. Upon arrival in Puerto Rico the merchandise is stored in the defendant's local warehouses. The defendant took no special orders and shipped no merchandise to Puerto Rico intended for a particular customer. Sales from the San Juan branch during the same period came to approximately $20,000 a month. The defendant does not know in advance the regular needs of its customers for the reason that all sales are made directly from the defendant's local warehouses.

While working for the defendant the plaintiff, Domenech, drove a panel delivery truck which though owned by the defendant was driven exclusively by the plaintiff. In this truck he traveled a prescribed route selling the products of the company to local customers.

From the testimony it appears that Domenech started work daily between five and six A.M. by going to the office, checking out the merchandise he expected to sell that day, loading it on his truck, and starting off on his route. It was his practise to carry a little more merchandise than he expected to sell on a particular day. His customers were mostly bakers, and he visited them daily. Their purchases varied little from day to day. Domenech was known among his customers as an employee of "the Fleishmann Company". He sold "Fleishmann's yeast", a brand name for products of the defendant, and it appears that a salesman for "Budweiser yeast" visited some of the same customers. Domenech finished work between five and six P.M. by turning in his collections and unsold merchandise. Part of his job was to make new customers, and it is clear that he himself determined what quantities of merchandise the customers might take on a particular day and that although the defendant required him to visit his regular customers daily it did not tell him what quantities to deliver each day.

The trial court found that from the end of October, 1938, through September, 1942, the plaintiff's salary was raised from $95 a month to $110 a month and that this salary increase was based on the fact that he had been able to increase sales in his territory; that the defendant did not take "special orders"; that all shipments when stored in warehouses were mingled with other similar merchandise and became part of the general mass of property in Puerto Rico; and that the plaintiff had nothing to do with any of the products of the defendant until after they were stored in the warehouses. From the evidence and findings of fact the District Court concluded that the plaintiff was not engaged in commerce or the production of goods for commerce [1] and that his work was that of an outside salesman [2] and therefore exempt from the provisions of §§ 6 and 7 of the Act.

Before this court the appellant makes two contentions: first, that the appellant and the defendant employer were both engaged "in commerce" within the meaning of the Fair Labor Standards Act; and second, that the appellant's work for the defendant was not that of an "outside salesman" and therefore exempt from coverage under § 13(a) (1).

The general test of coverage is the relation of the employee to interstate commerce or the production of goods for such commerce and not the nature of the employer's business. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468. We are not concerned with production of goods for commerce here. To be "in commerce" the employee's activities must be "so closely related to the movement of the commerce as to be a part of it". McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538.

If the defendant in this action were an independent wholesaler there would be no doubt but that the activities of the plaintiff would fall outside the coverage of the Act as not touching interstate shipments. Walling v. Jacksonville Paper Co., supra; Higgins v. Carr Bros. Co., supra. In the Jacksonville case, however, the Supreme Court in defining "in commerce" adopted a test somewhat beyond the implications of the "state of rest"[3] doctrine which holds that the interstate journey ends when the goods come to rest in the wholesaler's warehouse and are intermingled with the mass of property there, and the "prior order" doctrine used to extend coverage past the warehouse point when goods are imported to meet specific orders placed with the wholesaler by his customers. In expanding coverage to include goods ordered pursuant to a preexisting contract or understanding the court analogized these transactions to special orders and held that a break in the continuity of transit at a warehouse is not controlling if there is "a practical continuity of movement" [317 U.S. 572, 63 S.Ct. 336] from the out-of-state manufacturer through the wholesaler's warehouse

---

[1] § 3(b) (c) and (j), 29 U.S.C.A. §§ 203(b) (c) and (j).

[2] §§ 13(a) (1) and 3(k), 29 U.S.C.A. § 213(a) (1) and § 203(k).

[3] For coverage under the Fair Labor Standards Act generally see 41 Michigan Law Review 1060.

to the customer. "The contract or understanding pursuant to which goods are ordered, like a special order, indicates where it was intended that the interstate movement should terminate." In rejecting the contention that the Act applied where the wholesaler's customers form a stable group whose orders are recurrent as to volume and kind so that their needs could be estimated with some precision the court left the door open to future inclusion finding on the facts before it that the requisite continuity of movement was lacking.

So far as the first point raised here is concerned it is apparent that the decision of the District Court rested on the theory that the interstate journey ended at the warehouse and that the appellant's handling of the merchandise after it had come to "rest" in the warehouse was a local activity which placed him beyond the coverage of the Act. The appellant, on the other hand, relies upon the theory that his work was the final step in getting the products of Pan American Standard Brands, Inc., to its customers. That is, he contends that he was engaged in delivering merchandise to certain pre-established customers who happened to be bakers and whom he visited daily on a fixed route assigned by his employer. Pan American Standard Brands, Inc., is a Delaware corporation "selling" from its New York office; the San Juan branch is not an independent wholesaler that acquired separate title to the merchandise it handled; and some of this merchandise is perishable [4] and must be stored in refrigeration and be distributed daily. It is with this in mind that the appellant urges the proposition that delivery to a distributing agency does not end the interstate movement and cites DeLoach v. Crowley's, Inc., 5 Cir., 1942, 128 F.2d 378, 379. That court held that if the employer was a "mere distributing agency" of an extra-state supplier "its customers are the customers of its principal, and so is its business of local distribution. Transmission of the goods from New York to the customers would not be broken by their receipt and handling by the distributing agency. Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308." See the Jacksonville case, supra, 317 U.S. at page 568, 63 S.Ct. at page 335, 87 L.Ed. 460 where the court said, "a temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act. As in the case of an agency (cf. De-Loach v. Crowley's, Inc., 5 Cir., 128 F.2d 378) if the halt in the movement of goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points."

We do not agree that the business of the defendant here comes within the rule of the DeLoach case, supra. The employer in that case was in business in Miami, Florida, and was a corporate subsidiary of Crowley's Dairy Products of Binghamton, New York. The Miami business purchased milk and milk products from other states and sold them at wholesale to retail dairies within the state. Most of the goods were purchased from Crowley's Dairy Products in five and ten gallon containers, intended to go unbroken to consumers. These products were delivered by the parent company to the defendant in trucks in Miami. There they were transferred to the defendant's trucks "as quickly as possible" and delivered to local customers.[5] To apply the DeLoach rule in the instant case we would have to take the position that the business transaction involved was between the principal in New York by his agent in Puerto Rico and the local customer. We do not go so far.

The Jacksonville Paper case, supra, dealt with the situation of the independent wholesaler. There the course of business began with the independent wholesaler purchasing goods out-of-state for resale to local retail customers from whom the ultimate consumer made his purchases. A variant on this we encounter in the chain-store situation where goods are imported for distribution to the importer's own retail outlets and not independent local retailers. In this

---

[4] It may be conceded that yeast is a perishable product. The appellant distributed other products, however, which the court could have found were not of the same perishable nature.

[5] The case was tried on the pleadings. The District Court granted a motion to dismiss on the ground that the petition failed to show that the plaintiff fell within the coverage of the Act. The Circuit Court remanded the case with instructions to determine whether Crowley's, Inc., was a mere distributing agency or a separate corporation doing its own business.

In support of the appellant's position see 31 Georgetown L.R. 462.

type of situation the Circuit Courts of Appeals are in disagreement as to the coverage of the Act.[6] In those cases finding a continuity of movement through the warehouse to the retail outlets it was evident in view of such finding that the outlets were the intended terminal points of the interstate journey in spite of the stopover at the warehouse. The present case involves a third type of situation. Here the extra-state manufacturer or supplier maintains a branch within the state (the territory of Puerto Rico here) from which goods are sold direct to the consumer through "salesmen". The needs of the branch are determined on the ground by checking sales against inventories on the basis of which orders are then placed with the New York office. Goods are regularly shipped according to order to Puerto Rico where they are stored in a number of warehouses and intermingled with the general mass of goods on hand. It appears that the warehouse stock would be enough to carry on business for a month or more. Only in an ultimate sense can it be said that the New York supplier is shipping goods to Puerto Rico and selling them in local markets. The immediate pattern shows the branch determining its needs in accordance with local market considerations. In the absence of special orders or pre-existing contracts or understandings, the branch is dealing directly with the general trade through its "salesmen".

On the facts of this case we are of the opinion that there is a substantial break in the movement of the products involved here at the warehouse as to warrant dividing the commerce involved into its interstate and intrastate phases. As we view the case it seems clear that the intended terminal point of the interstate journey was the warehouse and not the consumer.

Since we are of the opinion that interstate commerce does not extend past the warehouse point, and the appellant's activities clearly fall on the other side of the line there drawn, it becomes unnecessary to consider his second contention that he is not outside the coverage of the Act as an "outside salesman".

The judgment of the District Court is affirmed with costs to the defendant, appellee.

---

[6] See Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778, certiorari denied, 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130; Walling v. American Stores Co., 3 Cir., 133 F.2d 840; Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75; Walling v. Silver, 1 Cir., 136 F.2d 168; Walling v. L. Wiemann Co., 7 Cir., 138 F.2d 602, 150 A.L. R. 878, certiorari denied 321 U.S. 785, 64 S.Ct. 782; Walling v. Block, 9 Cir., 139 F.2d 268, certiorari denied 321 U.S. 788, 64 S.Ct. 787; Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331; A. H. Phillips, Inc. v. Walling, 1 Cir., 144 F.2d 102.