W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**DURHAM SANDWICH COMPANY**, Inc., and Austin R. Pendergraft, Defendants.

No. C–58–D–65.

United States District Court M. D. North Carolina, Durham Division.

Dec. 7, 1965.

Charles Donahue, Sol., Beverley R. Worrell, Regional Atty., and Daniel M. Williams, Jr., Attorney, of the United States Dept. of Labor, for plaintiff.

Eugene C. Brooks, III, of Brooks & Brooks, Durham, N. C., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

GORDON, District Judge.

This action was brought by the plaintiff, W. Willard Wirtz, Secretary of Labor, to enjoin the defendants, Durham Sandwich Company, Inc., and Austin R. Pendergraft, from future violations of the overtime compensation, minimum wage and recordkeeping provisions of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 201 et seq., hereinafter referred to as the Act, and to restrain the withholding of overtime compensation and minimum wages alleged to be withheld from employees of the defendants.

The defendants requested a jury trial; however, on May 26, 1965, the Court granted the plaintiff's motion to strike the defendants' demand for a jury trial. Thereafter, the case was heard by the Court without a jury.

The plaintiff and defendants have stipulated that during the period from September 20, 1963, through December 11, 1964, Nancy Lipscomb, who is an employee of the corporate defendant, was not paid the applicable minimum wage as required by the Act. The parties have stipulated and agreed that Nancy Lipscomb is entitled to recover of the defendants the amount of $417.95 as all unpaid minimum wages; therefore, injunctive relief restraining the defendants from withholding unpaid minimum wages due Nancy Lipscomb was not considered in the trial of the case.

Having now carefully considered all of counsels' proposals, arguments and contentions, as well as the testimony, pleadings, stipulations, briefs and exhibits submitted, and the reasonable inferences to be drawn therefrom, the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., makes its Findings of Fact and Conclusions of Law as follows:

### Findings of Fact

1. The plaintiff, the Secretary of Labor, United States Department of Labor, brings this action pursuant to the authority conferred upon him by the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq. The corporate defendant, Durham Sandwich Company, Inc., is a corporation organized and existing under and by virtue of the laws of the State of North Carolina, having its principal place of business in Durham, North Carolina, where it is engaged in the manufacture and sale of sandwiches and in the wholesale dis-

tribution of cakes, pies, pastries, and similar items to lunch counters and drug stores. The individual defendant, Austin R. Pendergraft, is a citizen and resident of the State of North Carolina, and as President of the corporate defendant actively manages, supervises and directs the business of Durham Sandwich Company, Inc.

2. Between April 5, 1963, and December 11, 1964, the defendants regularly and recurrently received shipments of goods from places outside the State of North Carolina. The defendants received these shipments of goods eleven to twenty-three times per month and on an average of three to six times per week. When the defendants received and stored out-of-state shipments, they were engaged in interstate commerce.

3. Between April 5, 1963, and December 11, 1964, Carl Davis was an employee of the defendants and also plant manager of the defendants' plant in Durham, North Carolina. During this period, Carl Davis received and stored fifty per cent of the shipments of goods which were sent to the defendants from outside of North Carolina, and he spent approximately thirty minutes a week engaged in this work. On occasions, Carl Davis unloaded the shipments from the trucks, and on other occasions, after the shipments had been placed inside the defendants' plant by persons other than defendants' employees, he would carry them approximately six feet to the cake room in defendants' plant and store them. Between April 5, 1963, and December 11, 1964, Carl Davis was regularly and recurrently engaged in interstate commerce, and whenever he was engaged in the work described above, the shipments of goods remained in the flow of interstate commerce until stored.

4. Between April 5, 1963, and December 11, 1964, Carl Davis was compensated by the defendants at a rate of $77.50 per week plus commissions for goods which he sold. He worked approximately 59½ hours per week, and he received no compensation for hours worked in excess of forty.

5. The defendants failed to keep and maintain adequate records of the hours worked by Carl Davis as required by the Act.

6. During the period from April 5, 1963, through December 11, 1964, Carl Davis was paid in salary and commissions a total of $7,377.46.

7. The defendants have unlawfully withheld from Carl Davis as overtime compensation the amount of $1,209.90.

### Discussion

In the determination of the issues presented herein, the Court makes reference to the provisions of Section 7(a) (1) of the Act, 29 U.S.C.A. § 207(a) (1), which provides that no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for any workweek longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which he is employed.

In a case of this nature, the burden is on the plaintiff to show by the preponderance of the evidence that the employee performed work for which he was improperly compensated. Thus the burden is on the plaintiff to show that defendants were engaged in interstate commerce. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, reh. den. 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946). The plaintiff has established that Carl Davis received and stored shipments of goods which were sent to the defendants from outside of the State of North Carolina. In McComb v. Herlihy, 4 Cir., 161 F.2d 568 (1947), the court held that even though out-of-state shipments were no longer in the flow of interstate commerce after they were stored in the warehouse of the defendant partnership, nevertheless, the employees who received and stored the goods were engaged in interstate commerce within the meaning of the Act. A similar result was reached in Mitchell v. Royal Baking Company, 5

Cir., 219 F.2d 532 (1955). As to when such interstate shipments are considered to be no longer in the flow of interstate commerce, the court in Sucrs. De A. Mayol & Co. v. Mitchell, 1 Cir., 280 F.2d 477, 480, 481 (1960), cert. den. 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960), stated:

> "In Domenech v. Pan American Standard Brands, Inc., 1 Cir., 1945, 147 F.2d 994, 995, we observed that 'the "state of rest" doctrine * * * holds that the interstate journey ends when the goods come to rest in the wholesaler's warehouse and are intermingled with the mass of property there.' Cf. '* * * after the property has arrived and has become commingled with the mass of property within the state.' A. L. A. Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 543, 55 S.Ct. 837, 849, 79 L.Ed. 1570 [97 A.L.R. 947]. The journey obviously does not terminate simply when the destined owner takes possession (or defendant could solve all of its troubles by sending a single employee to the pier), nor should it when the property crosses some particular threshold. In our opinion the placement of a shipment in an elevator, or on the floor by a doorway, results in only a 'temporary pause.' We believe we were correct in *Domenech* in stating that the mingling with other goods in the warehouse is the event which brings about a state of rest, and that this occurs when the goods have been placed in their intended destination as stock. * * * It follows that the court properly concluded that those employees concerned with receiving, checking, and storing goods within the warehouse are 'engaged in commerce.'"

■ The Court finds that when Carl Davis unloaded shipments of goods shipped from outside of North Carolina and when he carried such shipments to the cake room in the defendants' plant wherein they were stored and mingled with the stock of the defendants, he was engaged in interstate commerce within the meaning of the Act.

■ The defendants contend that even if Carl Davis were engaged in interstate commerce, the doctrine of *de minimis non curat lex* is applicable, and coverage under the Act should be disallowed. Even though the Court sympathizes with the contention of the defendants, it must disagree with it. Although an employer's participation in interstate commerce is minimal as compared to intrastate commerce, when such participation is regular and recurrent, he is engaged in interstate commerce under the Act. Mabee v. White Plains Publishing Company, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946); Mitchell v. Jaffe, 5 Cir., 261 F.2d 883 (1958); Tilbury v. Rogers, 123 F.Supp. 109 (W.D.La.1954). The Supreme Court of the United States rejected the application of *de minimis* as to the employer's minimal volume of business derived from interstate commerce when it stated in Mabee v. White Plains Publishing Company, 327 U.S. 179, 181, 182, 66 S.Ct. 511, 512, 513:

> "Here Congress had made no distinction on the basis of volume of business. By § 15(a) (1), 29 U.S.C.A. § 215(a) (1), 9 F.C.A. Title 29, § 215(a) (1) it has made unlawful the shipment in commerce of '*any* goods in the production of which *any* employee was employed in violation of' the overtime and minimum wage requirements of the Act. Though we assume that sporadic or occasional shipments of insubstantial amounts of goods were not intended to be included in that prohibition, there is no warrant for assuming that regular shipments in commerce are to be included or excluded dependent on their size."

It was established by the plaintiff that the defendants received out-of-state shipments of goods eleven to twenty-three times per month and on an average of three to six times per week. The Court finds that these were regular and recurrent shipments, and the defendants were engaged in interstate commerce.

As to the application of the *de minimis* doctrine to the involvement in interstate commerce by Carl Davis, the amount spent by him in interstate commerce as compared to intrastate commerce is not a determinative factor. This rule was set forth by the court in New Mexico Public Service Co. v. Engel, 10 Cir., 145 F.2d 636, 640 (1944), where it stated:

"It is true, of course, that the percentage of electricity used in interstate commerce is small, but it is not the volume or percentage of an employee's contribution to the movement of commerce which is the test of whether he is 'engaged in commerce' within the meaning of the Act. If the services he performs are essential to the movement of commerce and not merely sporadic and isolated, he is engaged in commerce within the meaning of the Act."

Similar results were reached in Drake v. Hirsch, 40 F.Supp. 290 (N.D.Ga.1941), and Tobin v. Ripley, Inc., 20 CCH Lab. Cas., Par. 66,472 (S.D.Fla.1951).

■ With this rule in mind, the Court is of the opinion that only if Carl Davis performed activities covered by the Act sporadically and only on isolated occasions can the Court disallow coverage. The plaintiff has established that Carl Davis unloaded and stored approximately fifty per cent of the interstate shipments received by the defendants, and he was engaged in this work at least once every week. Even though he only spent approximately thirty minutes in a fifty-nine and a half hour workweek engaged in interstate commerce or less than one per cent of his work week, Carl Davis is still covered under the Act because the percentage of an employee's time spent in covered work as compared to his total hours work is of no consequence. Tobin v. Ripley, supra. Therefore, the Court having found that Carl Davis' work in interstate commerce was regular and recurrent, he is covered by the Act. The fact that Carl Davis was primarily engaged in intrastate commerce is of no consequence as the defendants made no attempt to distinguish between work done in intrastate commerce and interstate commerce in payment of wages; therefore, all work is covered by the Act. Crook v. Bryant, 4 Cir., 265 F.2d 541 (1959).

Carl Davis testified that he normally worked from 8:30 o'clock a. m. until 6:30 o'clock p. m. six days a week and took no lunch period except for one-half hour on Sunday. The Court finds that he worked approximately fifty-nine and a half hours per week. The defendants cannot complain that the plaintiff did not present documentary proof to substantiate the testimony of Carl Davis. When an employer fails to keep adequate records, upon a showing that an employee has performed some work for which he was not properly compensated and the amount and extent of the work by just and reasonable inferences, it is then upon the employer to come forward with the precise amount of work performed. Anderson v. Mt. Clemens Pottery Co., supra.

■ In computation of the amount due Carl Davis for unpaid overtime compensation, the Court first has determined the total wages paid to him by the defendants between April 5, 1963, and December 11, 1964. The wages paid totaled $7,377.46, which information was confirmed by plaintiff's exhibit number two, a copy of the defendants' wage records for Carl Davis. The Court then determined that the total wages should be multiplied by the coefficient .146. This information was supplied by plaintiff's exhibit number three which is a coefficient table for computing extra half-time for overtime supplied by the United States Department of Labor and introduced into the evidence. The Court finds that Carl Davis is entitled to recover the amount of $1,209.90 as unpaid overtime compensation.

■ Even though the defendants are now in compliance with the Act and violations have ceased, an injunction against future violations is still available to the plaintiff. Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed.

29 (1944). The Court is also empowered to restrain an employer from withholding overtime compensation when found to be due to employees. Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 217.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C.A. § 1337; 29 U.S.C.A. § 217.

2. Defendants, Durham Sandwich Company, Inc., and Austin R. Pendergraft, its president, at all times pertinent hereto have been employers, within the meaning of the Act, of Carl Davis.

3. Carl Davis as an employee of the defendants was engaged in interstate commerce during the periods relevant in this suit.

4. The defendants, Durham Sandwich Company, Inc., and Austin R. Pendergraft, have violated § 7 and § 15(a) (2) of the Fair Labor Standards Act, 29 U.S.C.A. § 207 and § 215(a) (2), by employing Carl Davis in commerce for workweeks longer than forty hours without compensating him one and one-half times the regular rate of compensation for all hours worked in excess of forty hours.

5. As a result of violations of § 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207, the defendants have unlawfully withheld a total of $1,209.90 in overtime compensation from Carl Davis.

6. The defendants, Durham Sandwich Company, Inc., and Austin R. Pendergraft, have violated Sections 11(c) and 15(a) (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 211(c) and § 215(a) (5), by not keeping and maintaining adequate records of the hours worked by Carl Davis.

7. The plaintiff is entitled to an injunction enjoining the defendants, Durham Sandwich Company, Inc., and Austin R. Pendergraft, from violating Sections 7, 15(a) (2), 11(c) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 207, § 215(a) (2), § 211(c) and § 215(a) (5), and restraining the defendants from continued withholding of wages herein found due Carl Davis.

Counsel for plaintiff shall, within ten days of the date hereof, prepare and submit to the Court a judgment as to Carl Davis in accordance with these Findings of Fact and Conclusions of Law, and a consent judgment as to Nancy Lipscomb in accordance with the agreement of the parties. The judgment shall provide that the costs of this action be taxed against the defendants.